Jerry L. **MONTGOMERY,**
Petitioner–Appellant,

v.

Christopher E. **MELOY, Superintendent,**
**Respondent–Appellee (Two Cases).**

Nos. 95–3183, 95–3376.

United States Court of Appeals,
Seventh Circuit.

Submitted April 30, 1996 *.

Decided May 14, 1996.

Published July 15, 1996**.

---

* After an examination of the briefs and the records, we have concluded that oral argument is unnecessary in these cases; accordingly, these appeals are submitted on the briefs and the records. *See* Fed. R.App. P. 34(a); Cir.R. 34(f).

** This decision was released on May 14, 1996 as an unpublished order pursuant to Cir. R. 53(b).

The court has decided to reissue the decision as a       published opinion.

**1202**

Jerry L. Montgomery (submitted on briefs), Pendleton, IN, pro se.

Pamela Carter, Office of the Attorney General, Indianapolis, IN, for Christopher E. Meloy in No. 95–3183.

Pamela Carter, Robert L. Collins, Office of the Attorney General, Indianapolis, IN, for Christopher E. Meloy in No. 95–3376.

Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.

PER CURIAM.

We consolidate these appeals from the respective denials of Jerry Montgomery's sixth and seventh successive petitions for habeas corpus relief from his conviction for murder.

On April 30, 1986, a Lake County, Indiana jury found Montgomery guilty of murder for killing his father. The court sentenced him to forty years' imprisonment. Montgomery appealed to the Indiana Supreme Court, which affirmed his conviction. *Montgomery v. State,* 521 N.E.2d 1306 (Ind.1988), *cert. denied,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988), *reh'g denied,* 488 U.S. 950, 109 S.Ct. 382, 102 L.Ed.2d 371 (1988).

Montgomery filed his first petition for habeas corpus relief, *Montgomery v. Clark,* No. H 90–213 (N.D.Ind.1991) (*Montgomery I*), in 1990. The district court denied relief, holding that Montgomery had procedurally defaulted on most of the claims he raised, and that he had not been prejudiced by those errors that he had preserved for federal collateral review. This court denied Montgomery a certificate of probable cause to appeal. *Montgomery v. Clark,* No. 91–3693 (7th Cir. 1991), *cert. denied,* 502 U.S. 1118, 112 S.Ct. 1235, 117 L.Ed.2d 469 (1992), *reh'g denied,* 503 U.S. 999, 112 S.Ct. 1712, 118 L.Ed.2d 418 (1992).

A year and a half later Montgomery again sought habeas corpus relief, *Levi–Montgomery v. Adkins,* No. S 92–26(S) (N.D.Ind.1992) (*Montgomery II*), alleging two of the same grounds he raised in his first petition. The district court dismissed the petition as an abuse of the writ, and this court affirmed. *Levi–Montgomery v. Adkins,* No. 93–1272, 16 F.3d 1225 (7th Cir.1993) (unpublished order).

Four months later, still undeterred, Montgomery filed his third and fourth petitions on the same day in different divisions of the Northern District of Indiana. *Montgomery v. Farley,* No. 92 C 147 (N.D.Ind.1992) (*Montgomery III*) (filed in the Hammond Division on April 7, 1992), and *Montgomery v. Farley,* No. 92 C 238 (N.D.Ind.1992) (*Montgomery IV*) (filed in the South Bend Division on April 7, 1992). In *Montgomery III*, the district court denied Montgomery permission to proceed *in forma pauperis* and dismissed his petition as successive. This court denied Montgomery's request for a certificate of probable cause to appeal. *Montgomery v. Farley,* No. 94–1847 (7th Cir.1994). The district court also dismissed *Montgomery IV*, but Montgomery did not appeal that dismissal.

Some time after Montgomery filed his third and fourth petitions, the Northern District of Indiana evidently grew tired of his frequent filings—in addition to his petitions for habeas corpus relief, Montgomery had

filed more than a half dozen civil rights suits since 1988. In *Montgomery v. Kanz*, No. 92–095 (N.D.Ind.1992), the Northern District apparently enjoined Montgomery from filing any new suits in that court without first obtaining the court's permission. Not one to be so easily stopped, Montgomery simply filed his next petition for habeas corpus relief, *Montgomery v. Farley*, No. IP¶ 1132–C (S.D.Ind.1994) (*Montgomery V*), in the Southern District of Indiana, although he was neither convicted nor confined there. The court dismissed the petition for lack of jurisdiction pursuant to 28 U.S.C. § 2241(d), and again, Montgomery did not appeal.

All of which brings us to Montgomery's current petitions. On November 16, 1994, Montgomery obtained leave to file his sixth petition for habeas corpus relief in the Northern District of Indiana. *Montgomery v. Newkirk*, No. 94 C 920 (N.D.Ind.1994) (*Montgomery VI*). At some point, the Indiana Department of Corrections transferred Montgomery to the Indiana Youth Center (IYC) in Plainfield, Indiana. The IYC is in the Southern District of Indiana, and so Montgomery filed his seventh petition, *Montgomery v. Newkirk*, No. 95 C 499 (S.D.Ind.1995) (*Montgomery VII*), in that court on April 19, 1995. In both cases, the Respondent argued that the court should dismiss the petition as an abuse of the writ, 28 U.S.C. § 2254, Rule 9(b), and the district courts denied relief on that ground.

Because the petitions and appeals in *Montgomery VI* and *Montgomery VII* raise nearly identical issues, we consolidate them for this disposition.[1] In these petitions, Montgomery raised a number of substantive claims: that the contracts pertaining to his imprisonment are void as against public policy because public funds wrongfully are being spent to keep him incarcerated, that the prosecutor in his murder trial wrongfully commented upon his post-arrest silence in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d

91 (1976), that the trial court violated the *Patterson* rule (an Indiana rule of evidence dealing with the admissibility of out-of-court statements; *see Mason v. Duckworth*, 74 F.3d 815 (7th Cir.1996)), and that he has been prejudiced by the inordinate delay in receiving a ruling on his state petition for post-conviction relief (PPCR).

■ Because Montgomery raised these claims for the first time in his sixth petition for habeas corpus relief—and repeated them in his seventh petition—the Respondent properly asserted abuse of the writ as an affirmative defense in both cases. *McCleskey v. Zant*, 499 U.S. 467, 489–90, 111 S.Ct. 1454, 1467–68, 113 L.Ed.2d 517 (1991). Montgomery may be excused for failing to raise these claims in his earlier petitions if he can show cause and prejudice, *id.* at 493, 111 S.Ct. at 1469–70, or if he can show that a fundamental miscarriage of justice would result from refusing to hear these claims. *Id.* at 494–95, 111 S.Ct. at 1470–71.

■ At the outset, we can dispose of Montgomery's contracts and public funds argument. Montgomery offers no cause for failing to raise this claim in his first petition, and so he is barred from now raising it.

■ Montgomery does, however, offer two causes for failing to present his *Doyle* and *Patterson* claims in his earlier petitions. He first argues that the State wrongfully denied him access to his trial transcripts, and that without those transcripts he was unable to raise these claims earlier. According to Montgomery, without his trial transcripts he was unaware that these errors occurred and that the trial court failed to give curative instructions to the jury.

For two reasons, this argument does not establish cause for failing to raise these claims earlier. First, Montgomery did not need his trial transcripts merely to raise these claims in a petition for habeas corpus

---

**1.** On April 24, 1996, while this case was pending on appeal, the President signed into law the "Antiterrorism and Effective Death Penalty Act of 1996." (Pub.L. No. 104–132, 110 Stat. 1214.) Title I of this Act significantly curtails the scope of federal habeas corpus review. We need not decide in this case to what extent the amend- ments to federal habeas corpus review in the Act apply to petitions pending when the Act was signed into law, because even under the more expansive scope of review permitted prior to the Act, the Appellant in this case would not have been entitled to federal habeas corpus relief.

relief. Montgomery was—presumably—at his own trial: he heard the witnesses' testimony and the court's instructions to the jury, and therefore knew or should have known what transpired. He was thus on notice that he should include his *Doyle* and *Patterson* claims in his first petition. *McCleskey*, 499 U.S. at 499, 111 S.Ct. at 1473.

Second, the record clearly shows that nothing prevented Montgomery from obtaining his transcripts before he filed his first petition. Montgomery describes his own efforts to obtain the transcripts as "diligent" while accusing the Attorney General of Indiana of deliberately withholding the transcripts and impeding his efforts to obtain them by making them unavailable until 1993. The truth is, however, a little different from how Montgomery describes it.

Montgomery first petitioned the state courts to release a copy of the transcripts to him on February 9, 1987, while his direct appeal was pending before the Indiana Supreme Court. The court properly denied his *pro se* request—he was represented by counsel at that time, and had to act through him. Moreover, with his appeal under consideration by the Indiana Supreme Court, he had no need for the transcripts—any petition for habeas corpus relief at that time would have been premature.

Montgomery did not make another attempt to obtain the transcripts for four and one-half years. He filed *Montgomery I* on July 16, 1990, without having made a second attempt to obtain the transcripts, although the Indiana Supreme Court had issued its decision two years earlier, on June 1, 1988. Moreover, at no point during the *pendency* of *Montgomery I* did he move to obtain the transcripts or amend his petition. It was only on October 31, 1991–after the district court had already denied his petition-that Montgomery moved to obtain a copy of his trial transcripts. But by then, of course, it was too late—he had lost *Montgomery I*, and any new grounds for relief or evidence in support of relief would have been denied as an abuse of the writ. *McCleskey*, 499 U.S. at 498, 111 S.Ct. at 1472–73. Thus, the district court properly denied Montgomery's belated motion.

Montgomery delayed nine months before making his third attempt to obtain his transcripts on May 28, 1992–this time from the Clerk of the Indiana Supreme Court. The Clerk wrote back to Montgomery, indicating that the transcripts were not available *at that time* because they were checked out to the Attorney General's office—who no doubt was using them to respond to one of the three petitions for habeas corpus relief Montgomery had filed in the previous five months. There is nothing in the record to indicate that the Attorney General deliberately was trying to prevent Montgomery from obtaining the transcripts. Finally, a year later, Montgomery succeeded in obtaining the trial transcripts from the Indiana Public Defender's office.

These efforts—four isolated attempts to obtain his transcripts over six years—do not show a serious or diligent attempt to obtain the transcripts. Montgomery had two years between the denial of his appeal by the Indiana Supreme Court and his first petition in federal court during which to obtain these transcripts. Nothing, and certainly no state actor or agency, prevented him from obtaining his trial transcripts during this time—the only time during which the transcripts would have been useful to him. His failed attempt to get the transcripts after the district court had already dismissed *Montgomery I* simply came too late, and was due solely to his lack of diligence in obtaining the transcripts before filing his first petition or while that petition was pending before the court. Accordingly, there is no merit to Montgomery's claim that the state's deliberate withholding of his trial transcripts is good cause for excusing his abuse of the writ.

■ Montgomery's second asserted cause for failing to raise his current claims in his first petition is that he received ineffective assistance of trial and appellate counsel. According to Montgomery, his attorneys failed to raise the *Doyle* and *Patterson* claims, thereby denying him effective assistance. This argument completely misses the mark. While his counsel's failure to raise an issue on appeal might be sufficient cause to excuse a procedural default, thereby allowing him to argue unexhausted claims in his first petition,

it does not excuse him from failing to raise the claims in his first petition. There is no logical causal connection between Montgomery's attorneys' failure to raise these arguments on direct appeal and Montgomery's failure to raise them in his first petition where he was proceeding *pro se*. Thus, ineffective assistance of counsel is not good cause for excusing Montgomery's abuse of the writ.

■ Alternatively, Montgomery asserts the actual innocence and miscarriage of justice exceptions to the cause and prejudice requirement. In practice, these two exceptions are the same: if a petitioner can show that he is factually—as opposed to legally—innocent of the crime for which he was convicted, a federal court may entertain a successive petition for habeas corpus. *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992); *Steward v. Gilmore,* 80 F.3d 1205, 1207 (7th Cir. 1996).

■ Montgomery claims that he would not have been convicted for murder but for the *Doyle* and *Patterson* testimony introduced against him. These claims do not come close to establishing actual innocence. Rather, Montgomery is merely raising a claim of legal innocence. The testimony that Montgomery challenges is "truthful inculpatory evidence which [does] not affect the reliability of the guilt determination," and hence cannot form the basis for an actual innocence exception to abuse of the writ. *McCleskey,* 499 U.S. at 502, 111 S.Ct. at 1474–75.

Thus, Montgomery has not established good cause for having failed to raise his *Patterson* and *Doyle* claims in his first petition for habeas corpus, nor can he raise these claims under the actual innocence exception. The district court therefore properly rejected these claims under the abuse of the writ doctrine.

■ Montgomery raises one final claim in his petitions. He argues that the "inordinate delay" in receiving a ruling on his state PPCR violated his rights. On September 16, 1991, Montgomery filed his state PPCR alleging the same *Doyle* and *Patterson* claims he later raised in *Montgomery VI* and *VII.* Two months later, Montgomery's public defender moved for and received an indefinite

continuance. On July 6, 1993, Montgomery dismissed his public defender and received permission to proceed *pro se.* On March 17, 1994, the Superior Court of Lake County held a hearing on Montgomery's claims. Seven months later, the court still had not issued a judgment on Montgomery's PPCR. Montgomery then petitioned the Indiana Supreme Court for a writ of mandamus compelling the lower court to issue a judgment, but the Indiana Supreme Court denied that petition. So far as the record indicates, the Superior Court still has not issued a ruling on Montgomery's PPCR. It is not clear from his briefs whether Montgomery is arguing that the delay was the cause for his failure to bring his substantive claims in his first federal habeas corpus petition, or whether he is instead arguing that the delay is itself a substantive ground for granting habeas corpus relief. In either case, we reject Montgomery's claims.

■ Montgomery cannot claim that the delay in receiving a ruling on his PPCR establishes good cause for excusing his abuse of the writ. Although an inordinate delay in receiving a ruling on a PPCR may constitute an exhaustion of state remedies, thereby allowing a petitioner to bring a federal claim for habeas corpus relief, *Lane v. Richards,* 957 F.2d 363, 365 (7th Cir.1992), *cert. denied,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992), the delay will not excuse a petitioner from asserting all of his claims in his first petition. Moreover, Montgomery filed *Montgomery I* on July 16, 1990; he did not file his PPCR until September 16, 1991. Thus, whatever delay there has been in issuing a ruling on Montgomery's PPCR cannot have been the reason he failed to raise these claims in his first petition for habeas corpus relief, filed more than a year earlier.

Alternatively, Montgomery may be arguing that the delay in receiving a ruling on his PPCR is itself a ground for granting his federal petition for habeas corpus relief. If so, he might not be barred by abuse of the writ—this claim, arguably, did not accrue until 1994 at the earliest, and so Montgomery need not have (indeed could not have) raised this claim in his earlier petitions.

██ Even if Montgomery is not barred by the abuse of the writ doctrine, however, delay in receiving a ruling on a discretionary state collateral appeal is not a ground for federal habeas corpus relief. Federal habeas corpus relief is available only to persons being held in state custody in violation of the Constitution or federal law; it is not a remedy for errors of state law. *Milone v. Camp*, 22 F.3d 693, 698 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 720, 130 L.Ed.2d 626 (1995). No constitutional provision or federal law entitles Montgomery to any state collateral review, *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987), let alone prompt collateral review. Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, *see, for example, Lane v. Brown*, 372 U.S. 477, 484–85, 83 S.Ct. 768, 772–73, 9 L.Ed.2d 892 (1963); *Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), errors in state collateral review cannot form the basis for federal habeas corpus relief. *See, for example, McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir.1995); *Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 462, 130 L.Ed.2d 370 (1994); *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir.1993); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir.1989) (per curiam), *cert. denied*, 493 U.S. 1012, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir.1988); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir.1987); *Kirby v. Dutton*, 794 F.2d 245, 247–48 (6th Cir.1986); *see also Wickliffe v. Farley*, 809 F.Supp. 618, 624–25 & n. 3 (N.D.Ind.1992) (following majority of circuits), *aff'd*, 53 F.3d 334, 1995 WL 261122 (7th Cir.1995) (unpublished disposition). *But see Dickerson v. Walsh*, 750 F.2d 150, 152 (1st Cir.1984).

██ Thus, we cannot say that mere delay in receiving a ruling on a state PPCR violates the Due Process Clause. Although we have suggested that inexcusable delay in processing a direct criminal appeal may violate due process, *see Allen v. Duckworth*, 6 F.3d 458, 459, 460 (7th Cir.1993), *cert. denied*, 510 U.S. 1132, 114 S.Ct. 1106, 127 L.Ed.2d 417 (1994), the same does not hold true for delay in processing a collateral appeal. Due process does not include prompt resolution of collateral appeals. Whereas a direct criminal appeal has now become a fundamental part of the criminal justice system, *United States v. Marbley*, 81 F.3d 51, 52 (7th Cir. 1996), state post-conviction relief is not a part of the criminal proceeding—indeed, it is a civil proceeding that occurs only after the criminal proceeding has concluded. *Finley*, 481 U.S. at 557, 107 S.Ct. at 1994; *see also Murray v. Giarratano*, 492 U.S. 1, 10, 109 S.Ct. 2765, 2770–71, 106 L.Ed.2d 1 (1989) ("State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either trial or appeal.") Delay in processing that collateral claim does not make the continued imprisonment of the defendant unlawful, and hence, does not warrant federal habeas corpus relief.

██ One final issue requires our attention. The district court in *Montgomery VII* imposed costs against Montgomery. Fed. R.Civ.P. 54(d). Such an award is permissible against an indigent prisoner, *McGill v. Faulkner*, 18 F.3d 456 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 233, 130 L.Ed.2d 157 (1994), and we see no abuse of discretion by the district court here. Montgomery has made extensive use of the federal courts for the past decade, filing numerous civil rights suits and petitions for habeas corpus relief. So far as we can tell, Montgomery has lost every suit he has ever brought. It is only fair that he help defray the costs he imposes on others through his frequent litigation.

Montgomery's sole response to the award of costs-citing *Allen*, 6 F.3d at 460, for the proposition that habeas corpus is not a compensatory remedy—is inapposite. The Respondent did not sue Montgomery under § 2254 seeking compensation; he sought an award of costs under the Federal Rules of Civil Procedure. When Montgomery filed his petition, he willingly invoked the Federal Rules of Civil Procedure—including Rule 54. He cannot now complain about the application of that rule to him. Perhaps he will

consider this award of costs before he files *Montgomery VIII*.

AFFIRMED.