**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

GEORGE ERMAN DAGO,

       Defendant - Appellant.

No. 04-1184

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 96-RB-1930 (MJW))**

---

Stephen M. Wheeler, Wheeler Law Offices PC, Evergreen, Colorado, for
Defendant-Appellant.

John M. Hutchins, Assistant United States Attorney, Denver, Colorado (William
J. Leone, Acting United States Attorney, with him on the brief), for Plaintiff-
Appellee.

---

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HENRY**,
Circuit Judge.

---

**EBEL**, Circuit Judge.

---

In this case, George Erman Dago appeals from the denial of his 28 U.S.C. § 2255 petition for habeas relief by the United States District Court for the District of Colorado. We conclude that the district court's failure to instruct the jury in Dago's 1992 trial in accordance with the subsequent holding of Richardson v. United States, 526 U.S. 813, 815 (1999) (holding that a jury must unanimously agree on which specific violations make up the "continuing series of violations" that underlie a continuing criminal enterprise conviction), is subject to harmless-error analysis under the standard set out in Brecht v. Abrahamson, 507 U.S. 619, 622-23 (1993). Applying the Brecht standard, we find that the court's error in this case was harmless. We also hold that the district court's seven-and-a-half-year delay in denying Dago's § 2255 petition does not amount to a denial of due process sufficient to justify granting Dago habeas relief. We hold that Dago's trial counsel was not constitutionally ineffective, in part because the record in this counseled habeas proceeding does not contain the evidentiary material necessary for us to evaluate fully Dago's ineffective-assistance claim. Finally, we hold that Dago's sentence was not imposed in violation of Blakely v. Washington, 542 U.S. 296 (2004), because that decision does not apply retroactively to the convictions of federal prisoners bringing initial habeas petitions. Therefore, we AFFIRM the judgment of the district court.

2

# BACKGROUND

In 1992, a federal grand jury returned an eighty-one count indictment against Dago and nineteen other individuals for activities related to narcotics trafficking. See United States v. Dago, 813 F. Supp. 736, 739 n.1 (D. Colo. 1992), aff'd in part, rev'd in part, No. 93-1042, 1994 WL 387836 (10th Cir. July 26, 1994) (unpublished). Dago went to trial, and a jury found him guilty of (1) conspiracy to possess with intent to distribute marijuana; (2) conspiracy to possess with intent to distribute cocaine; (3) distribution of marijuana and cocaine; (4) possession of marijuana and cocaine with the intent to distribute; (5) conducting a financial transaction to promote drug trafficking; (6) using communications facilities to promote drug trafficking; (7) distributing more than 500 grams of cocaine; (8) conspiracy to conduct a financial transaction to promote drug trafficking; and (9) engaging in a continuing criminal enterprise ("CCE"). See id. at 740. The district court sentenced Dago to 360 months' imprisonment. See Dago, 1994 WL 387836 at *1.

Dago appealed, and we affirmed in part and reversed in part. See id. Specifically, we reversed the drug conspiracy convictions because they were lesser included offenses within the CCE conviction; reversed the money laundering conspiracy conviction because the indictment failed to allege an overt

3

act in furtherance of the conspiracy[1]; ordered the district court to vacate the special assessments inadvertently imposed on four marijuana distribution charges that the government omitted from its notice of counts for trial; and affirmed the district court's judgment with respect to all other issues raised on appeal.  See id. at *1, *7.

In August 1996, Dago filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The district court deemed the application to be a motion to vacate sentence pursuant to 28 U.S.C. § 2255.  Over the next seven-and-a-half years, the parties actively litigated a number of issues, and Dago's case was passed among at least three district court judges and two magistrate judges.  The district court denied Dago's § 2255 petition in March 2004.

In this appeal, Dago contests the district court's denial of his § 2255 petition.  Although the district court denied Dago a certificate of appealability

---

[1]At first glance, this result seems at odds with Whitfield v. United States, 543 U.S. 209, 219 (2005) (holding that "conviction for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), does not require proof of an overt act in furtherance of the conspiracy").  However, in this case, the government did not charge Dago with conspiracy under § 1956(h), but rather under 18 U.S.C. § 371.  Section 371 "expressly includes an overt-act requirement."  Whitfield, 125 S. Ct. at 690; see 18 U.S.C. § 371 ("If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, *and one or more of such persons do any act to effect the object of the conspiracy*, each shall be fined under this title or imprisoned not more than five years, or both.") (emphasis added).  Thus, our decision in Dago's direct appeal is not in tension with Whitfield.

4

("COA"), this court granted him a COA on the four issues discussed in this opinion, ordered the government to file a brief, and set the case for oral argument.[2]

## DISCUSSION

We exercise jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253. See United States v. Espinoza-Saenz, 235 F.3d 501, 502 (10th Cir. 2000). We review the district court's legal rulings de novo and its findings of fact for clear error. See United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000).

---

[2]Specifically, this court granted Dago a COA on the following four questions:

1.  Whether the trial court's admitted violation of Richardson v. United States, 526 U.S. 813 (1999) (holding that a jury must unanimously agree on which specific violations make up the "continuing series of violations" that underlie a continuing criminal enterprise conviction), is subject to harmless error analysis.

2.  Whether counsel was ineffective in representing Mr. Dago at trial.

3.  Whether Mr. Dago's sentence was enhanced by facts not admitted by the defendant or submitted to the jury for proof beyond a reasonable doubt in violation of Blakely v. Washington, 124 S. Ct. 2531 (2004).

4.  Whether a seven-and-a-half-year delay in denying Mr. Dago's 28 U.S.C. § 2255 motion amounts to a denial of due process.

## I.     <u>Richardson</u> Error

Dago contends that we should reverse his CCE conviction because the district court failed to instruct the jury in his 1992 trial in accordance with the later holding of <u>Richardson</u>, 526 U.S. at 813.  To resolve this claim, we analyze two preliminary issues: (1) whether <u>Teague v. Lane</u>, 489 U.S. 288 (1989), allows <u>Richardson</u> to be applied retroactively on collateral review; and (2) whether Dago's failure to raise a <u>Richardson</u>-type argument at trial and on direct appeal procedurally bars him from raising the issue under <u>United States v. Frady</u>, 456 U.S. 152 (1982).  After answering the first question in the affirmative and the second question in the negative, we consider whether a <u>Richardson</u> error is subject to harmless-error analysis, what standard applies in that analysis, and whether the error in this case was harmless.

### A.     Retroactivity under <u>Teague</u>

In this case, Dago's conviction was final before the Supreme Court decided <u>Richardson</u> in 1999.  For <u>Teague</u> purposes, a conviction becomes final when the availability of a direct appeal has been exhausted and the time for filing a petition for certiorari with the Supreme Court has elapsed or the Court has denied a timely petition for certiorari.  See <u>Caspari v. Bohlen</u>, 510 U.S. 383, 390 (1994).  Dago's conviction became final in October 1994, when the Supreme Court denied his petition for certiorari.  See <u>Dago v. United States</u>, 513 U.S. 978 (1994).

6

Where a Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." Schriro v. Summerlin, 542 U.S. 348, 351 (2004). "As to convictions that are already final, however, the rule applies only in limited circumstances." Id. While new substantive rules generally apply retroactively, new procedural rules do not. See id. at 351-52.

"A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." Id. at 353. Richardson announces a new rule of substantive law. See United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002). As such, Teague, which generally blocks the retroactive application of new procedural rules to cases on collateral review, see 489 U.S. at 310-11, does not bar the retroactive application of the substantive Richardson rule to Dago's case.

## B.     Frady Defense

Dago does not contend that he raised a Richardson issue at trial or on direct appeal. In fact, Dago states that "[n]one of the issues raised in [his] brief were presented to the Court in the original appeal." As such, Dago's Richardson claim implicates Frady, 456 U.S. 152, which states that a defendant's failure to raise an issue at trial or on direct appeal imposes a procedural bar to the review of that claim in a habeas proceeding that is excusable only if certain conditions are met. See id. at 167-68.

7

However, in this case the government concedes that it failed to assert a Frady defense to Dago's § 2255 Richardson claim before the district court. In circumstances where the government has failed to raise a Frady defense below, but does so on appeal, we may consider the defense, but we need not do so. Compare Barajas-Diaz, 313 F.3d at 1246, with United States v. Allen, 16 F.3d 377, 378-79 (10th Cir. 1994).

Here, "[w]e elect not to pursue a disposition of this case on the ground of procedural bar, and the government is not entitled to such a disposition having failed until now to raise this issue." Allen, 16 F.3d at 379. In particular, we are concerned that because the government concedes that it did not raise a Frady defense until filing its appellate brief, and even then suggested that the defense may have been waived, Dago never had a meaningful chance to respond to the argument that Frady barred him from asserting a Richardson claim. See Hines v. United States, 971 F.2d 506, 509 (10th Cir. 1992).

### C. Harmless-Error Analysis

To establish that a defendant engaged in a CCE, the government must prove that the defendant committed a felony narcotics violation, see 21 U.S.C. § 848(c)(1), and that this narcotics offense was part of a continuing series of three or more related violations, see id. § 848(c)(2); United States v. Apodaca, 843 F.2d 421, 427 (10th Cir. 1988). Richardson states that "a jury has to agree

8

unanimously about which specific violations make up the 'continuing series of violations.'" 526 U.S. at 815. That is, Richardson makes clear that "a jury in a federal criminal case brought under [21 U.S.C.] § 848 must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" Id.

In this case, a jury convicted Dago of engaging in a CCE. However, the jurors were not instructed that they had to agree unanimously on the predicate underlying violations. This amounts to error under Richardson. See id.; see also United States v. Rivera, 347 F.3d 850, 852-53 (10th Cir. 2003). However, holding that the trial court committed Richardson error does not alone justify vacating Dago's CCE conviction. We must also consider whether the trial court's error in instructing the jury was of sufficient magnitude to justify issuance of the writ of habeas corpus without regard to prejudice, or whether the trial court's error should be subjected to a harmless-error review.

### 1.    Availability of Harmless-Error Review

"[M]ost constitutional errors can be harmless." Arizona v. Fulminante, 499 U.S. 279, 306 (1991). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." Rose v.

9

Clark, 478 U.S. 570, 579 (1986). Indeed, the Supreme Court "ha[s] found an error to be structural, and thus subject to automatic reversal, only in a very limited class of cases." Neder v. United States, 527 U.S. 1, 8 (1999) (quotation omitted).

"Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Id. at 9. Therefore, in general, "the omission of an element [from a jury instruction] is subject to harmless-error analysis." Id. at 10.

The courts of appeals that have addressed the issue have concluded uniformly that a claim that jury instructions violate Richardson is subject to harmless-error analysis. See, e.g., Santana-Madera v. United States, 260 F.3d 133, 139 (2d Cir. 2001); Lanier v. United States, 220 F.3d 833, 838-39 (7th Cir. 2000); United States v. Brown, 202 F.3d 691, 699 (4th Cir. 2000); United States v. Escobar-de Jesus, 187 F.3d 148, 161-62 (1st Cir. 1999); United States v. Long, 190 F.3d 471, 476 n.3 (6th Cir. 1999). We have held that any error resulting from a jury instruction that violated Richardson was harmless, without explicitly considering whether such an error is subject to harmless-error review. See Rivera, 347 F.3d at 853. Now we join the other circuits that have considered the

10

issue in holding that claims that jury instructions violated <u>Richardson</u> may be reviewed under a harmless-error standard.

### 2. Standard for Harmless-Error Review

In <u>Rivera</u>, we stated in passing that "[i]n evaluating convictions on collateral review, the harmless error inquiry 'is whether the error had substantial and injurious effect or influence in determining the jury's verdict.'" <u>Id.</u> at 852 (quoting <u>Brecht</u>, 507 U.S. at 637). However, we did not decide what standard should apply in reviewing a claim that the jury was not properly instructed under <u>Richardson</u>, for although the petitioner in that case argued for the application of the more stringent "harmless beyond a reasonable doubt" standard of <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967), we noted that we did not need to address the argument because any <u>Richardson</u> errors in the case were harmless under either standard. <u>See</u> <u>Rivera</u>, 347 F.3d at 852.

At least three courts of appeals have held that <u>Brecht</u> is the appropriate standard to use when conducting a <u>Richardson</u> harmless-error analysis in a § 2255 case. <u>See</u> <u>United States v. Montalvo</u>, 331 F.3d 1052, 1057-58 (9th Cir. 2003) ("<u>Brecht</u>'s harmless error standard applies to habeas cases under section 2255 . . . ."); <u>Ross v. United States</u>, 289 F.3d 677, 682 (11th Cir. 2002) ("[A]pplication of the <u>Brecht</u> standard to <u>Richardson</u> error on collateral appeal is the appropriate approach."); <u>Murr v. United States</u>, 200 F.3d 895, 906 (6th Cir.

11

2000) (noting that "for purposes of federal habeas corpus review, a constitutional error that implicates trial procedures shall be considered harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict'") (quoting Brecht, 507 U.S. at 637).  Another court of appeals—the Second Circuit—has hinted at the same conclusion in dicta.  See Santana-Madera, 260 F.3d at 140 (concluding in a direct criminal appeal that a Richardson error was harmless under either the Brecht or the Chapman standard but noting that "[g]enerally, when evaluating presumptively correct convictions on collateral *habeas* review, the harmless error inquiry for errors of a constitutional dimension is whether the error had substantial and injurious effect or influence in determining the jury's verdict") (quotations omitted, emphasis added).

These holdings are consistent with the Supreme Court's discussions of harmless error in Brecht and another case.  Although Brecht was a § 2254 case, its description of the standard to apply in evaluating the harmlessness of error is not limited to § 2254 cases.  See Brecht, 507 U.S. at 623, 638 ("[W]e hold that the Kotteakos harmless-error standard [which states that the applicable test is whether a violation 'had substantial and injurious effect or influence in determining the jury's verdict'] applies *in determining whether habeas relief must be granted because of constitutional error of the trial type*.") (emphasis added).  A later case assumes that the Brecht standard applies in all collateral proceedings,

12

including § 2255 proceedings. See United States v. Vonn, 535 U.S. 55, 63 (2002) (describing Brecht as "the variant of harmless-error review applicable on collateral attack").

It is true that in Brecht, a state court had already evaluated the claimed error on direct appeal under the more stringent Chapman standard, see Brecht, 507 U.S. at 636—a step that has not occurred in this case. Moreover, Brecht relies in part on principles of comity and federalism in concluding that a relaxed standard should apply in reviewing the harmlessness of error during collateral review. See id. at 636-37. These principles are not implicated by § 2255 proceedings like this one.

These differences between Brecht and the case at bar do not preclude applying the Brecht standard here. We have rejected the theory that the Brecht standard applies only when reviewing convictions that have been previously reviewed under the Chapman standard. See Herrera v. Lemaster, 301 F.3d 1192, 1199-1200 (10th Cir. 2002) (en banc). Moreover, many of the concerns that motivated Brecht also are applicable in § 2255 cases:

> [Brecht] is, more than anything else, motivated by "considerations underlying our habeas jurisprudence," that apply equally to collateral attacks on both federal and state convictions—considerations such as the different purposes of direct and collateral review and the importance of finality in criminal convictions. Our reading of Brecht is fortified by the case's citation to Teague's anti-retroactivity principle to illustrate the general practice of "appl[ying] different standards on habeas than [those] on direct review."

13

<u>Montalvo</u>, 331 F.3d at 1057-58 (citations omitted).  Because both § 2254 and § 2255 give rise to collateral proceedings with similar purposes, and because finality in criminal convictions is an important consideration in both types of proceedings, we agree with the Ninth Circuit that the logic behind <u>Brecht</u> also is applicable in § 2255 cases.  Moreover, because "<u>Teague</u>'s nonretroactivity doctrine applies equally to habeas petitions brought under sections 2254 and 2255," <u>Daniels v. United States</u>, 254 F.3d 1180, 1194 (10th Cir. 2001) (en banc), <u>Brecht</u>'s reliance on <u>Teague</u> provides tangential support for the proposition that <u>Brecht</u>, like <u>Teague</u>, applies to § 2255 proceedings.

For all the foregoing reasons, we hold that the <u>Brecht</u> standard applies when conducting a harmless-error review of a § 2255 petitioner's claim that the jury in his or her trial was instructed in a manner that violates <u>Richardson</u>.

### 3.    Application of Harmless-Error Analysis

As noted above, in this case the government tried Dago on more than twenty counts, and the jury convicted Dago on all of them.  Of those counts, the jury was entitled to consider at least eleven—by the most conservative of estimates—as part of the CCE.[3]  The jury's unanimous guilty verdicts on eleven

---

[3]Dago asserts that the jury instructions stated that the jury could consider twenty-one counts as part of the CCE.  Dago argues that ten of the twenty-one counts were improperly included in this list.  We cannot verify Dago's assertion that the jury was instructed to consider twenty-one potential predicate counts, as

(continued...)

14

or more counts that can be considered as predicate offenses "necessarily reflect the jury's unanimous finding that [Dago] committed those . . . crimes." Rivera, 347 F.3d at 853. Therefore,

> we are not left to wonder what the jury would have done if the trial court had specifically instructed that it must unanimously find [Defendant] guilty of each predicate violation before convicting on the CCE charge. Instead, we can look to what the jury actually did, that is, it unanimously convicted on four [here, at least eleven] predicate violations.

Id.; see also Santana-Madera, 260 F.3d at 140-41[4]; Montalvo, 331 F.3d at 1058

---

[3](...continued)
it is unclear whether the jury instructions are contained in the record. A document entitled "Plaintiff's Instruction No. 27" is included in the record, but it is unclear whether this was the instruction actually given to the jury. "Plaintiff's Instruction No. 27" lists twenty-seven counts, not twenty-one counts. Assuming for the sake of argument that both Dago's assertion and his argument are correct—that is, that the jury was instructed to consider twenty-one potential predicate counts, and ten of those counts were improper—there were still eleven counts that the jury could consider as predicate offenses for the CCE.

To the extent that Dago argues that his CCE conviction is not predicated upon a series of three or more related narcotics violations, the fact that he was convicted of at least eleven predicate violations reveals that such an argument is without merit.

[4]Santana-Madera stated:

> The Richardson error occurred when the district court failed to require the jury to specifically and separately agree on each of the three violations that comprised the "continuing series of violations" required for a CCE conviction. However, in addition to the CCE count, the jury also convicted Santana-Madera of no less than eight substantive counts of cocaine distribution and a single count of conspiracy to distribute cocaine. Thus, the jury unanimously agreed on at least nine major violations of the federal drug laws, any three

(continued...)

("[A] Richardson jury instruction error is per se harmless . . . if the jury that convicted the defendant of a CCE charge also convicted him of at least three related drug violations alleged to be predicate violations constituting the 'continuing series[.]'"); Brown, 202 F.3d at 700-01 (same); Long, 190 F.3d at 476 n.3 ("[T]he error was clearly harmless as the jury also unanimously found him guilty of more than three drug violations committed in the course of the ongoing conspiracy to distribute cocaine."); United States v. Jefferson, 215 F.3d 820, 823 (8th Cir. 2000) ("Although the district court failed to instruct the jury that it must unanimously agree on which three or more acts constitute the 'series of violations' requirement in the CCE, the omission was harmless in this case because the jury convicted [the defendants] of more than three predicate federal narcotics offenses.") (citation omitted). And, because each of the counts pertain to the drug activities of a major drug ring, we can easily conclude that these predicate offenses were all "related," constituting a continuing series of criminal conduct.

---

[4](...continued)
of which are sufficient to establish the "continuing series of violations" under Richardson and § 848. So, if the district court . . . had given the jury the instruction required by Richardson, it is beyond cavil that the jurors would have unanimously agreed on three predicate violations of the drug laws. They unanimously agreed on nine such violations. The error here . . . is clearly harmless.

260 F.3d at 140-41 (footnote and citations omitted).

16

For this reason, we hold that any <u>Richardson</u> instructional errors were harmless. Thus, we determine that (1) a trial court's violation of <u>Richardson</u> is subject to harmless-error analysis; (2) the <u>Brecht</u> standard is the most appropriate harmless-error standard to apply; and (3) when evaluated under the <u>Brecht</u> standard, the trial court's error in this case was harmless.

## II.     District Court Delay

Dago argues that his habeas petition remained pending at the district court for so long that his due process rights were violated. Dago asserts that this denial of due process should result in the dismissal of his conviction or the reversal of his conviction and dismissal of the charges against him.

"[D]elay of [a] post-conviction remedy may very well work a denial of due process." Kelly v. Crouse, 352 F.2d 506, 506 (10th Cir. 1965) (per curiam) (addressing delay in the context of state post-conviction proceedings); see also Smith v. Kansas, 356 F.2d 654, 657 (10th Cir. 1966) (same). And such delays may excuse exhaustion requirements. See, e.g., Jones v. Crouse, 360 F.2d 157, 158 (10th Cir. 1966) (remanding for a district court to excuse exhaustion if an eighteen-month delay in adjudicating appeal from denial of post-conviction relief could not be justified); Smith, 356 F.2d at 657 (remanding for the district court "to take such steps as it deems necessary to secure petitioner's right to a prompt hearing on his claim of unconstitutional restraint" where more than one year passed between filing of motion for post-conviction relief and entry of appealable order). Furthermore, "the writ of habeas corpus, challenging detention, is reduced to a sham if the trial courts do not act within a reasonable time." Smith v. Sec. of the N.M. Dept. of Corrs., 50 F.3d 801, 821 n.5 (10th Cir. 1995).

However, a delay in post-conviction proceedings does not give rise to an

independent due process claim that would justify granting a defendant habeas relief. In Mason v. Myers, 208 F.3d 414 (3d Cir. 2000), the Third Circuit addressed whether a state court's delay of four years in processing a petition for collateral relief under Pennsylvania's Post Conviction Relief Act constituted a due process violation cognizable in a § 2254 proceeding. Id. at 415. The Third Circuit rejected the claim, holding that "[e]ven if such a delay constitutes a due process violation . . . . a delay in a collateral proceeding can[not] be the basis of a petition for a writ of habeas corpus." Id. at 417. Similarly, in Montgomery v. Meloy, 90 F.3d 1200 (7th Cir. 1996), the Seventh Circuit stated that "[d]elay in processing [a state] collateral claim does not make the continued imprisonment of the defendant unlawful, and hence, does not warrant federal habeas corpus relief." Id. at 1206.

These holdings are consistent with our own decisions emphasizing that due process challenges to post-conviction procedures fail to state constitutional claims cognizable in a federal habeas proceeding. See Phillips v. Ferguson, 182 F.3d 769, 772-73 (10th Cir. 1999) (holding that challenges to the constitutionality of state post-conviction procedures are not cognizable as independent claims in federal habeas corpus actions); Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[B]ecause the constitutional error [the defendant] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis

19

for his incarceration, it states no cognizable federal habeas claim."); Hopkinson v.

Shillinger, 866 F.2d 1185, 1219 (10th Cir. 1989) ("Even where there may be some

error in . . . post-conviction proceedings, this would not entitle appellant to

federal habeas corpus relief since appellant's claim . . . represents an attack on a

proceeding collateral to detention of appellant and not on the detention itself.")

(quotation omitted), overruled on other grounds, Sawyer v. Smith, 497 U.S. 227

(1990).[5]

Even when a federal court delays resolving a direct criminal appeal, this

court has held that the federal prisoner's conditional release from incarceration

based on that delay alone is not available.[6]  See United States v. Wiktor, 146 F.3d

[5]While Mason, Montgomery, Phillips, Sellers, and Hopkinson are all § 2254
cases, we see no reason why the result should be any different in § 2255 cases
like this one.  After all, such decisions rest substantially on the fact that a court's
role in a § 2254 case is limited to examining the events that occurred in the
proceedings leading up to the petitioner's conviction, see Sellers, 135 F.3d at
1339; Hopkinson, 866 F.2d at 1219, and this is the same role that a court has in a
§ 2255 case.  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)
("[T]he federal role in reviewing an application for habeas corpus is limited to
evaluating what occurred in the state *or federal* proceedings that actually led to
the petitioner's conviction; what occurred in the petitioner's collateral proceeding
does not enter into the habeas calculation.") (emphasis added).

[6]This court has recognized the possibility that a state prisoner might be
entitled to conditional release where a state court unconstitutionally delays
deciding a direct criminal appeal.  See Harris v. Champion, 15 F.3d 1538, 1567
(10th Cir. 1994); Harris v. Champion, 938 F.2d 1062, 1069-70 (10th Cir. 1991).
But that remedy is available only if the state court has not yet ruled on the direct
criminal appeal by the time the federal 28 U.S.C. § 2254 proceeding is heard on
its merits, or if the defendant can show that the delay actually prejudiced his

(continued...)

815, 819 (10th Cir. 1998). If release is not available on a federal direct criminal appeal, then it will not be available in the more attenuated § 2255 collateral challenge to a federal conviction either. Cf. Montgomery, 90 F.3d at 1206 (noting, in 28 U.S.C. § 2254 proceeding, that "[w]hereas a direct criminal appeal has now become a fundamental part of the criminal justice system, state post-conviction relief is not part of the criminal proceeding—indeed, it is a civil proceeding that occurs only after the criminal proceeding has concluded").

Thus, we hold that the district court's seven-and-a-half-year delay in denying Dago's § 2255 petition was not a denial of due process sufficient to justify granting Dago habeas relief. A federal prisoner experiencing delay in a federal court's resolution of his challenge to a federal conviction, either on direct appeal or collaterally, has other remedies available to him to combat delay. He can seek a writ of mandamus. See Johnson v. Rogers, 917 F.2d 1283, 1284-85 (10th Cir. 1990) (granting a writ of mandamus based on fourteen-month delay in district court's processing of 28 U.S.C. § 2241 petition). And, if there is such a delay in deciding a § 2255 motion that that remedy has become inadequate, the

<hr />

[6](...continued)
state-court appeal. See Harris, 15 F.3d at 1565-66. The possibility that a federal court will grant a state prisoner conditional habeas relief because of an unconstitutional delay in resolving his direct appeal is intended simply to insure that "the appeal will be heard" by the state court. United States v. Wiktor, 146 F.3d 815, 819 (10th Cir. 1998). Those circumstances, then, differ from the circumstances at issue in this case.

defendant may be able to assert a petition for habeas relief under 28 U.S.C. § 2241.  See United States v. Pirro, 104 F.3d 297, 298, 299-300 (9th Cir. 1997); Stirone v. Markley, 345 F.2d 473, 474-75 (7th Cir. 1965); see also Caravalho v. Pugh, 177 F.3d 1177, 1178 (10th Cir. 1999) (suggesting 28 U.S.C. § 2241 petition might be available to challenge federal criminal conviction where 28 U.S.C. § 2255 is not adequate).  The defendant may also have a civil damages remedy available for any violation of due process.  Cf. Harris, 15 F.3d at 1566 (indicating state inmate may assert civil damages claim under 42 U.S.C. § 1983 for the denial of due process occasioned by the delay in a state court's deciding his direct criminal appeal).  In this case, however, Dago and his counsel never invoked any of these measures to speed up the district court's processing of his § 2255 motion. Nor did Dago seek other relief besides habeas relief resulting in his release. Because Dago and his counsel sought only habeas relief, we cannot provide any relief at all.

## III. Ineffective Assistance

Dago argues that his trial counsel, Art Nieto, was ineffective. Based on our de novo review of this mixed question of law and fact, see United States v. Whalen, 976 F.2d 1346, 1347 (10th Cir. 1992), we find each of the numerous reasons asserted by Dago purporting to show Nieto's ineffectiveness to be without merit. Only one of the claims presents a close question: Dago's contention that Nieto's assistance was ineffective because Nieto's closing argument stated that Dago should be convicted on a number of counts.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. While a defendant must ordinarily prove deficient performance by counsel coupled with a showing of prejudice in order to prevail on an ineffective-assistance claim, see Strickland v. Washington, 466 U.S. 668, 687 (1984), there is a narrow class of cases where the particular circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." United States v. Cronic, 466 U.S. 648, 658 (1984) (footnote omitted). If a defendant can prove such circumstances actually existed, prejudice will be presumed. See id. at 659-62.

"[T]he admission by counsel of his client's guilt to the jury . . . represents a paradigmatic example of the sort of breakdown in the adversarial process that

23

triggers a presumption of prejudice." United States v. Williamson, 53 F.3d 1500, 1511 (10th Cir. 1995). "Whether such an admission actually occurred is necessarily fact-intensive." Id. In making this determination, "[t]he focus must be on whether, in light of the entire record, the attorney remained a legal advocate of the defendant who acted with undivided allegiance and [in] faithful, devoted service." Id. (quotation omitted).

In this case, a transcript of Nieto's closing argument is not included in the record on appeal. Thus we cannot determine whether Nieto's assertions in his closing argument "amount to the types of statements recognized in other cases that have been held to constitute a concession of guilt." Id.; see, e.g., United States v. Swanson, 943 F.2d 1070, 1071, 1074 (9th Cir. 1991) (addressing defense counsel's statements during closing argument that there was "no reasonable doubt" that his client was the perpetrator and that there was "no reasonable doubt" as to an essential element of the offense charged); Francis v. Spraggins, 720 F.2d 1190, 1193-94 & 1193 n.7 (11th Cir. 1983) (addressing defense counsel's statement during closing argument in the guilt phase of a capital trial that "I think he committed the crime of murder"); Jones v. State, 877 P.2d 1052, 1055-57 (Nev. 1994) (addressing statement during closing argument that "the evidence shows beyond a reasonable doubt that the defendant" was the perpetrator); State v. Harbison, 337 S.E. 2d 504, 506-08 (N.C. 1985) (addressing

24

statement by defense counsel that "I don't feel that [the defendant] should be found innocent").

Indeed, it is possible that Nieto did not concede Dago's guilt on many counts, as Dago alleges, but merely focused on challenging the conspiracy and CCE counts against his client while remaining silent about other counts. Depending on the particular characteristics of such an effort, this would not necessarily amount to ineffective assistance, for

> experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments and focusing on one central issue if possible. This insight is . . . applicable to closing arguments made at trial.

Williamson, 53 F.3d at 1512 (quotations, alterations, and citations omitted). Thus, we have held that a defense counsel's effort to obtain an acquittal for his client on a conspiracy charge, rather than focusing on the substantive distribution charges against his client, did not undermine counsel's otherwise ethically and constitutionally sufficient representation. See id.; see also Fowler v. Ward, 200 F.3d 1302, 1310-11 (10th Cir. 2000) (finding no ineffective assistance where counsel conceded the defendant's presence at the crime scene because the concession was consistent with the defense theory that defendant was not the principal in the alleged crime), overruled on other grounds, Moore v. Marr, 254 F.3d 1235, 1239 (10th Cir. 2001); Hale v. Gibson, 227 F.3d 1298, 1323 (10th Cir. 2000) (holding that defense counsel "made a reasonable strategic decision to

25

concede some involvement by [the defendant] . . . and focused on the extent of his involvement and whether others could have been involved"). Without a transcript of Nieto's closing argument, we simply cannot evaluate Dago's claim.

Dago is represented by counsel in this appeal. Appellants, if counseled, generally have the duty to cause an adequate record on appeal to be transmitted to the appellate court. See United States v. Hubbard, 603 F.2d 137, 139-40 (10th Cir. 1979). Appellants' obligation to provide the record on appeal includes the duty to provide necessary transcripts. See 10th Cir. R. 10.1(A)(1) ("The appellant must provide all portions of the transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal."). Because the evidentiary record before us is insufficient to permit an assessment of Dago's claim, we must affirm the judgment of the district court denying the relief that Dago seeks. See Scott v. Hern, 216 F.3d 897, 912 (10th Cir. 2000).

Here, what we do have are statements made by Dago and Nieto at the habeas hearing below.

Dago's recollection is as follows:

Q    Your attorney made a closing argument in your case, didn't he?
A    Yes, he did.
Q    During that closing argument, did he ask the jury to convict of some counts?
A    Yes, he did.
Q    What counts were those?
A    All the counts except . . . the CCE for money laundering and I

26

guess for the conspiracy . . . .

Nieto's recollection is as follows:

A . . . [T]he trial strategy was to . . . recognize that Mr. Dago was probably going to be convicted of some distribution counts. And my focus was to . . . argue against the continuing criminal . . . enterprise count and the conspiracy counts.

Q . . . And why was this your trial strategy to say knock out the CCE or the conspiracy count?

A . . . I have found that in order to get juries to . . . side with you, you need to be as honest as possible. And to try to suggest to this jury that Mr. Dago was not involved in the distribution counts, I thought, would have begged their credibility and, frankly, would have lost the jury.
 And so . . . I took the . . . strategy that I would admit on behalf of Mr. Dago what I could admit but . . . having sort of 'fessed up to certain aspects of the evidence, I was hoping that I would have a little credibility left with the jury to convince them to not convict him of the CCE counts.

Although this evidence is insufficient for us to evaluate this claim of ineffective assistance of counsel, it suggests that counsel made a strategic decision to challenge those counts upon which defendant faced a possibility of life imprisonment while not challenging certain pieces of evidence that he determined to be unchallengeable. Even as to the lesser counts, Nieto did not acknowledge that he conceded his client's guilt. All Nieto said was that he "fessed up to certain aspects of the evidence." Counsel do that all the time. It is a time-honored strategy of advocates to cede evidence that cannot be rebutted so that counsel has credibility to challenge evidence

27

where challenge is fruitful. Nothing in Nieto's recollection of his closing argument is sufficient to sustain an ineffective assistance of counsel claim. See Bullock v. Carver, 297 F.3d 1036, 1046-51 (10th Cir. 2002).

Accordingly, we affirm the denial of habeas relief on the basis of a claim of ineffective assistance of counsel.

## IV.  **Blakely Error**

Dago argues that the trial court sentenced him in violation of Blakely, 542 U.S. 296, by enhancing his sentence on the basis of facts not admitted or submitted to the jury for proof beyond a reasonable doubt. Dago raised this general issue under Apprendi v. New Jersey, 530 U.S. 466 (2000), in his filings below and raises the issue under Blakely in this appeal.

Dago's argument is squarely foreclosed by our decision in United States v. Price, 400 F.3d 844, 849 (10th Cir.) ("[W]e hold that Blakely does not apply retroactively to convictions that were already final at the time the Court decided Blakely, June 24, 2004."), cert. denied, 126 S. Ct. 731 (2005). Because Dago's convictions were final by October 1994, we reject his argument that Blakely provides grounds for affording him habeas relief.[7]

_____

[7]To the extent that Dago attempts to argue the same claim under Apprendi, that argument is foreclosed by United States v. Mora, 293 F.3d 1213, 1218-19 (10th Cir. 2002). To the extent that Dago might attempt to argue the same claim under United States v. Booker, 543 U.S. 220 (2005), that argument is foreclosed

(continued...)

28

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[7](...continued)
by <u>United States v. Bellamy</u>, 411 F.3d 1182, 1186-87 (10th Cir. 2005).