**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 29, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DELARICK HUNTER,

      Petitioner-Appellant,

v.

DAVID McKUNE, Warden, and
STEPHEN N. SIX, Kansas Attorney
General,

      Respondents-Appellees.

No. 08-3184

(D. of Kan.)

(D.C. No. 5:07-CV-3142-SAC)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[**]

Delarick Hunter, a state prisoner proceeding pro se,[1] requests review of the

district court's denial of his 28 U.S.C. § 2254 petition for habeas relief. We

construe this request as an application for a certificate of appealability (COA).

---

[*] This order is not binding precedent except under the doctrines of law of
the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

[1] We construe pro se filings liberally. *See Van Deelen v. Johnson*, 497
F.3d 1151, 1153 n.1 (10th Cir. 2007).

Because Hunter's direct appeal is currently under adjudication in state court, we DENY his application for a COA and DISMISS this appeal.

## I. Background

A Kansas court convicted Hunter of two counts of battery against a law enforcement officer and in May 2005 sentenced him to 152 months' imprisonment. Believing his conviction resulted from constitutional error, Hunter filed a timely pro se notice of appeal. Approximately six weeks later, he filed a motion for appointment of appellate counsel.

A series of delays beset Hunter's direct appeal. Kansas's Appellate Defender Office was appointed in February 2006, but the entire office withdrew shortly afterward due to a conflict of interest. The district court appointed replacement appellate counsel in June 2006. For reasons unclear from the record, replacement counsel failed to docket the direct appeal with the Kansas Court of Appeals.

This failure to docket the appeal came despite significant efforts by Hunter. From August 2006 to May 2007, Hunter inquired about the status of his appeal with the Kansas appellate courts, attempted without avail to contact counsel numerous times, and filed a petition in state district court asking the court to order his counsel to docket Hunter's appeal and to file an appellate brief.[2] After

---

[2] The record does not indicate whether the state district court ruled on this motion.

these efforts failed to advance the direct appeal, Hunter filed a disciplinary complaint against his replacement counsel. In a March 2007 letter dismissing the complaint, Kansas's Office of the Disciplinary Administrator informed Hunter that while "extenuating circumstance [sic] have kept [counsel] from communicating . . . as much as he could," he "promise[d] to increase his communications" with Hunter. R., Vol. I, Doc. 21-2, Ex. D. Furthermore, the office noted, no evidence existed that replacement counsel intentionally ignored his client. The appeal was never docketed, however.

In May 2007, Hunter sought federal habeas review under 28 U.S.C. § 2254. In doing so, he argued his failure to exhaust state court remedies should be excused due to the inordinate delay in the processing of his direct appeal, and that this delay itself constituted a separate due process violation.

The district court found Hunter had not met the exhaustion requirements of § 2254. In particular, Hunter failed to demonstrate Kansas appellate courts were ineffective or unavailable to address his claims under § 2254(b)(1)(B). Docketing the appeal out of time "remain[ed] a viable option under Kansas law," and in the event his current counsel would not advance the appeal, Hunter could ask the state district court to appoint new counsel.[3] R., Vol. I, Doc. 23, at 3, 4. The

_____

[3] In his application for a COA before the district court and in his brief before this court, Hunter asserted that in November 2006 he requested that replacement counsel be removed and that new counsel be appointed. The record does not include either this request or its denial.

court then dismissed Hunter's habeas petition without prejudice and in a subsequent order denied a COA. The district court never addressed Hunter's separate due process claim.

Between the time the district court denied habeas relief in June 2008 and the time it denied a COA in July, the Kansas Court of Appeals docketed Hunter's direct appeal. R., Vol. I, Doc. 30, at 2 n.1. In its order denying a COA, the district court noted that the Kansas appellate "Case Inquiry System" website showed that in mid-June 2008, the Kansas Court of Appeals granted Hunter's motion to docket an appeal out of time and that Hunter's direct appeal "is now pending before that state appellate court." *Id.*

Presumably in response to this docketing of his direct appeal, Hunter no longer argues he should be excused from exhausting his state remedies. Instead, Hunter limits his appeal to the sole issue of whether Kansas's three-year delay in docketing his direct appeal separately violated his due process rights. *See Harris v. Champion*, 15 F.3d 1538, 1557 (10th Cir. 1994) (*Harris II*) ("[D]elay in adjudicating a state prisoner's direct criminal appeal may . . . give rise to an independent due process claim." (citations omitted)). We construe this as a request for a COA on this issue.

Because the applicable remedy for this alleged due process violation has already occurred—namely, the state court has docketed the direct appeal—we decline to issue a COA.

## II. Analysis

Because the district court denied Hunter a COA, he may not appeal the district court's decision absent this court's grant of a COA. 28 U.S.C. § 2253(c)(1)(A). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). This requires Hunter to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).

Hunter asserts Kansas's inordinate delay in docketing his direct appeal violated his due process rights. In *Harris II*, we held that inordinate delay in adjudicating a defendant's direct criminal appeal might give rise to an independent due process violation. 15 F.3d at 1557. In determining if such a due process violation occurred, we look to: (1) the length of delay; (2) the reason for the delay and whether it was justified; (3) whether the defendant asserted his right to a timely appeal; and (4) whether the delay prejudiced the defendant in relation to specific interests sought to be protected by a timely appeal. *See id.* at 1559. A rebuttable presumption of prejudice arises when the delay attributable to the government exceeds two years. *Harris v. Champion*, 48 F.3d 1127, 1132 (10th Cir. 1995) (*Harris III*). Here, the delay attributable to the government—and government-appointed counsel especially—exceeded two years. Particularly

-5-

troubling is the inability or unwillingness of Hunter's appointed replacement counsel to docket his client's direct appeal.

Nevertheless, even assuming for the sake of argument that all four requirements have been fulfilled and Hunter's due process rights were violated, a COA should not issue because the relief to which he would be entitled has already been granted.

"Our cases have made clear that the remedy for a due process violation caused by inordinate delay is . . . consideration of [the] defendant's appeal." *United States v. Wiktor*, 146 F.3d 815, 819 (10th Cir. 1998); *see also United States v. Dago*, 441 F.3d 1238, 1249 n.6 (10th Cir. 2006) ("The possibility that a federal court will grant a state prisoner conditional habeas relief because of an unconstitutional delay in resolving his direct appeal is intended simply to insure that the appeal will be heard by the state court." (quotation marks and citation omitted)).  The most appropriate remedy for a state's violation of the due process right to a timely appeal would therefore be "grant[ing] a conditional writ directing the state to release the petitioner if it did not decide his appeal within a specified period." *Reeves v. Little*, 120 F.3d 1136, 1138 (10th Cir. 1997) (citing *Harris II*, 15 F.3d at 1566–67).

As the district court noted in its order denying a COA, the Kansas Court of Appeals recently granted Hunter's motion to docket his direct appeal out of time and appears ready to consider his claims.  Therefore, even if we were to find a

due process violation, the appropriate remedy would result in a review that is already taking place.

Though Hunter's appeal was delayed, we have no reason to believe that the state process, now begun, will not provide him with an effective remedy. Therefore, absent a future delay that either warrants excusing exhaustion or granting a conditional writ of habeas relief, Hunter must exhaust his state remedies before seeking relief in federal court. *See* § 2254(b)(1)(A).

        *                    *                    *

For the reasons above, we DENY Hunter's request for a COA and DISMISS this appeal.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge