**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WELDON H. ANGELOS,

Defendant-Appellant.

No. 09-4224
(D.C. Nos. 2:07-CV-00936-TC and
2:02-CR-00708-PGC-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **BALDOCK**, and **HOLMES**, Circuit Judges.

Weldon H. Angelos appeals from the district court's order denying his

28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. We

previously granted him a certificate of appealability (COA), *see id.*

§ 2253(c)(1)(B), limited to three issues: (1) whether his attorney provided him

with ineffective assistance during plea negotiations; (2) whether his attorney

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

provided him with ineffective assistance during trial; and (3) whether he should have received an evidentiary hearing in district court relating to his ineffective-assistance-at-trial claim.

Having now had the opportunity to consider the government's responsive briefing and Angelos's reply, the relevant law, and the appendices filed by the parties, we affirm the district court's denial of § 2255 relief. Angelos has not sustained his burden in showing his attorney's conduct was constitutionally deficient so as to violate his Sixth Amendment right to counsel. Nor, for reasons we will explain, is he entitled to a COA on the additional issues he had raised.

## BACKGROUND

Angelos sold marijuana to a confidential informant, a fellow gang member, who claimed Angelos carried a firearm during two of the transactions. Angelos was arrested and subsequent searches of his apartment and his girlfriend's house revealed additional evidence of drug trafficking and weapons. He was indicted on a variety of drug distribution and gun charges. A jury convicted him of multiple drug, firearms, and money laundering crimes.

Among the offenses of conviction were three counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). "Section 924(c) mandates . . . five years of imprisonment for any person who 'uses' or 'carries' a firearm during and in relation to a federal drug trafficking crime, as well as for anyone who 'possesses' a firearm in furtherance

of any such crime." *United States v. Winder*, 557 F.3d 1129, 1138 (10th Cir.),

*cert. denied*, 129 S. Ct. 2881 (2009). Second or subsequent convictions under

§ 924(c) carry a mandatory term of twenty-five years, 18 U.S.C. § 924(c)(1)(C),

and run consecutively to one another, *id*. § 924(c)(1)(D)(ii).

At sentencing, the district court reluctantly concluded it was obligated by

statute to sentence Angelos to a total of fifty-five years for the three § 924(c)

convictions alone. It sentenced him to one day for all the remaining offenses, for

a total sentence of fifty-five years and one day.

On direct appeal, Angelos presented multiple arguments: evidence was

improperly admitted against him; evidence in his favor was improperly excluded;

the gun counts should have been "grouped" together for sentencing purposes since

they all arose out of the same basic transaction; and his sentence violated the

Eighth Amendment. We disagreed and rejected all these challenges to his

convictions and sentence. *United States v. Angelos*, 433 F.3d 738 (10th Cir.

2006). Angelos then brought this § 2255 motion, asserting numerous challenges

including claims of ineffective assistance of counsel during plea bargaining and at

trial. The district court denied without an evidentiary hearing all claims except

his claim of ineffective assistance during plea bargaining; held an evidentiary

hearing concerning that claim; then denied it as well.

## ANALYSIS

### I.  Standard of Review

"We review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error."  *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006).  Under § 2255, the district court is required to conduct an evidentiary hearing "unless the motion and files and records of the case conclusively show that prisoner is entitled to no relief," and the denial of an evidentiary hearing is reviewed for an abuse of discretion.  *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000).

### II.  Ineffective Assistance During Plea Negotiations

#### A.  Applicable Law

##### 1.  *Strickland* Standard

Angelos's ineffective assistance claims, both concerning plea bargaining negotiations and counsel's performance at trial, are governed by the two-part test described in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, we first ask whether counsel's representation "fell below an objective standard of reasonableness."  *Id.* at 687-88.  We then ask whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Counsel renders deficient performance when he makes "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment." *Id.* at 687. When assessing claims of deficient performance, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. We ask "whether counsel's assistance was reasonable considering all the circumstances." *Id.* To establish deficient performance, it is not enough for Angelos to show that his attorney's strategy was merely wrong, or his actions unsuccessful; he must demonstrate that the actions his attorney took were "completely unreasonable." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quotation omitted).

### 2. *Strickland* in the Plea Bargaining Context

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Ky.*, 130 S. Ct. 1473, 1480-81 (2010) (quotation omitted). Effective performance in this context requires "counsel's informed opinion as to what pleas should be entered." *United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997). The prejudice component in this context "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Where, as here, a petitioner chose to reject a plea offer, he must show a "reasonable probability that, but for his counsel's erroneous

advice . . . he would have accepted the [government's] offer." *Magana v. Hofbauer*, 263 F.3d 542, 551 (6th Cir. 2001) (§ 2254 case).

## B.  District Court's Credibility Findings

The district court held an evidentiary hearing.  At the hearing, the witnesses included Angelos; his trial counsel, Mr. Mooney; and the prosecuting attorney, Mr. Lund.  The court also accepted affidavits regarding their participation from Mooney and Lund, and an affidavit from Angelos.  After considering all of the evidence, the court made a general credibility finding adverse to Angelos.

After noting Angelos's testimony concerning the plea bargaining process differed in significant respects from Mooney's and Lund's, the district court concluded Angelos was "not credible."  As a general matter

> the statements made by Mr. Angelos, particularly in his affidavit, that contradict the testimony and declarations of Mr. Mooney and Mr. Lund are not credible.  Mr. Mooney's testimony was corroborated by that of Mr. Lund.  Moreover, the exhibits received at the hearing further support Mr. Mooney's testimony.

Aplt. App., Vol. II at 375 n.3 (citing to exhibits such as affidavits and correspondence between counsel).

We review the district court's decision to credit Mooney's testimony over Angelos's for clear error.  *See United States v. Carr*, 80 F.3d 413, 417-18 (10th Cir. 1996).  The district court's credibility findings in particular are entitled to considerable deference:  "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses . . . that

finding . . . can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

Throughout his briefing Angelos cites his own testimony pertaining to the plea-bargaining process. But he fails to show the district court erred by determining that his testimony lacked credibility where it contradicted that of Mooney and Lund. In our review of this issue, we therefore discount the factual allegations that contradict the testimony of Mooney and Lund.

### C. Application of *Strickland*

Angelos contends Mooney performed deficiently throughout the plea bargaining process to his prejudice in two ways: (1) failing to advise him concerning the adverse sentencing consequences he faced if he did not accept the plea offered by the government, and (2) affirmatively misrepresenting to him the sentence he faced if he went to trial.

The district court rejected these contentions, concluding that

> Mr. Mooney gave Mr. Angelos competent and thorough representation. The record shows that Mr. Mooney explained to Mr. Angelos the nature of the charges against him, the possible penalties (including the effect of the "stacking" of the § 924(c) charges), and the consequences of rejecting the government's plea offer. Although Mr. Mooney told Mr. Angelos that the decision to accept the government's plea rested with Mr. Angelos, Mr. Mooney made sure that Mr. Angelos understood the harsh penalty he faced if he refused the offer.

Aplt. App., Vol. II at 375 (footnote omitted).

Reviewing this claim de novo while accepting the factual predicates under the clear error standard, we agree with the district court's reasoning and disposition. For reasons we will discuss, Angelos has failed to show that Mooney provided him with deficient representation during plea bargaining.

### 1. Initial Plea Negotiations

On November 13, 2002, the government obtained an indictment against Angelos based on his three sales of marijuana to a confidential informant. This indictment contained six counts: three counts of distributing marijuana to the confidential informant; one count of possession of a firearm under § 924(c); and two less-serious firearms counts. The § 924(c) count was based on his first sale to Ronnie Lazalde, the confidential informant, which occurred on May 21, 2002. During this sale, Lazalde allegedly saw a Glock pistol lodged between the seat and center console of the black BMW car in which he and Angelos consummated the drug deal.

Department of Justice policy at the time required a defendant to plead guilty to the most serious provable offense, which in this case was the § 924(c) count. After Mooney opened negotiations with the prosecuting attorney, Lund, he was informed of the "most serious provable offense" requirement. Aplt. App., Vol. V at 1602. The prosecutor also told Mooney of the government's position that any required disposition would require a plea to the § 924(c) charge, which carried a minimum five-year term of imprisonment. *Id.*

-8-

Angelos contends that Mooney "failed to grasp and effectively communicate the grave federal sentencing realities working against Angelos, which included the Government's policy-driven position on accepting only a 924(c) plea and their belief that they were dealing with a major drug dealer." Aplt. Opening Br. at 37-38.[1] The record does not bear out this contention. Mooney's testimony shows that he did discuss with Angelos the government's position that a plea to the § 924(c) firearm charge would be required as an initial matter. In addition, Mooney testified that this discussion took place near the outset of negotiations. Aplt. App., Vol. V at 1602-03, 1612. The problem was that while Angelos was willing to concede his guilt on the drug charges, he vehemently denied the factual basis for the § 924(c) charge involving the confidential informant. Mooney testified, for example, that Angelos was "adamant" and "credible" in asserting that he did not possess a firearm during his transactions with Lazalde. Aplt. App., Vol. V at 1568. In fact, Angelos was "angry," "very upset" and "very disturbed" about being accused of possessing a firearm during those transactions. *Id.* at 1569. Angelos confirmed this by testifying at the evidentiary hearing that he told Mooney that he did not have a

---

[1]     Throughout his briefing, Angelos emphasizes Mooney's alleged incomprehension of various legal and factual realities pertinent to the plea bargaining process. We do not read these allegations to state a freestanding basis for an ineffectiveness claim. It is counsel's *performance* that forms the gravamen of an ineffectiveness claim, not his level of understanding. We are only concerned about Mooney's alleged lack of comprehension to the extent Angelos has shown it led to performance that fell short of professional norms.

firearm with him during the May 2002 transaction. "And did you tell Mr. Mooney that you would not plead guilty to a crime you did not commit? A. [Angelos] Yeah." *Id.* at 1527-28.[2]

As a result, Angelos told Mooney that he was willing to plead to the distribution of marijuana charges. Mooney considered these charges indisputable. Angelos was unwilling, however, to plead to the § 924(c) count. Given the government's position that any plea agreement would require a plea to a § 924(c) count, there was seemingly no basis for the parties to come to terms.

Angelos asserts, however, that he also communicated to Mooney his willingness to provide substantial assistance to the government in order to get the

---

[2]    Also at the evidentiary hearing, Angelos admitted he might have had a gun during at least one of the transactions:

> Q: Were you carrying a firearm on May 21st, 2002 when you sold marijuana to Mr. Lazalde?
>
> A: I don't remember, but I know I didn't have one on the console or anywhere visible in the car.
>
> Q: So you may have been carrying a firearm?
>
> A: It's a possibility, but I know I didn't have one anywhere visible.
>
>                          *    *    *
>
> A: I couldn't really remember for sure, but I was almost positive I didn't have one.

Aplt. App., Vol. V at 1526-27.

-10-

firearms charges dropped or otherwise obtain a reduced sentence. Mooney passed on this information to the government, and set up a meeting to discuss cooperation.

Significantly, by the time of the meeting about cooperation, Angelos faced other serious charges for which he had not yet been indicted. On November 15, 2002, police officers acting on the indictment had arrested Angelos in his apartment, where he consented to a search of the premises. This search uncovered marijuana, a large sum of money, and more firearms, including a loaded Glock pistol and a stolen Walther pistol.[3] In addition, on the day before his meeting with government agents, a search of the house where Angelos's girlfriend lived, found additional guns and drugs attributable to Angelos. The search revealed body armor, a rifle, two dozen large duffel bags containing

---

[3] These factual circumstances undermine Angelos's argument to the district court that "the soundest and most sensible plea choice that should have been suggested by counsel" at this point "would have involved Angelos pleading 'blind' to the original indictment's three marijuana charges and then contesting at trial the single 924(c) count set forth in the original indictment." Aplt. App., Vol. I at 121 n.4. To the extent Angelos continues to press this argument on appeal (he argues in his appellate briefing that Mooney "failed to understand that Angelos's sentencing exposure might have been significantly reduced even without a fully developed plea agreement with the Government," Aplt. Opening Br. at 40), we simply note that a "blind" plea (reached without a plea agreement with the government) would have been a very risky proposition. A blind plea would not have prevented Angelos from being indicted and prosecuted on additional drug and firearms charges resulting from the November 15, 2002, search or the subsequent search of his girlfriend's house. It is unsurprising that Mooney did not recommend this option to Angelos. Mooney's testimony was that he believed it was necessary to have all of the charges on the table to succeed in a settlement.

marijuana residue, and accounting sheets for the drug transactions. The agents also found the black BMW used in the controlled buys; a gun was in the trunk of the car.[4]

The cooperation interview with the government on December 17, 2002 did not go well. It is uncontested that Angelos presented misleading information to the government about his drug suppliers. In the opinion of government agents present at the meeting, he presented himself as an insincere and untrustworthy person. The agents also believed he had misled them about another factual matter, the location of the BMW involved in the drug transactions, at the time of the arrest. The November 15 search also likely suggested to them that Angelos was a larger player than he let on. To the extent Angelos blames the failure of this meeting on Mooney (who he alleges did not inform him of the imperative need to reach a cooperation agreement with the government in order to obtain a reduced sentence, given the enormity of the § 924(c) charges), he fails to show that Mooney's performance was constitutionally deficient.

Mooney, for example, testified that he explained the value of a cooperation agreement in obtaining a reduced sentence. Aplt. App., Vol. V at 1585. But Angelos claims he did not adequately emphasize the severity of the sentence he

---

[4]     In light of this evidence, Angelos's defense that he only dabbled in small-time marijuana sales finds scant support in the record.

faced prior to the meeting concerning cooperation.[5]  Angelos's cooperation argument boils down to this:  had Mooney informed him of the gravity of potential charges he faced, including more potential § 924(c) counts based on the additional searches,[6] he would not have misled the government.  But even if he had been forthcoming at the interview, it would have been the government's choice whether to enter into a cooperation agreement, which the record discloses as implausible.  He thus fails to show either constitutionally deficient performance by counsel, or prejudice.

Angelos also argues that Mooney discouraged him from considering cooperation after the first effort failed, and that he failed to renew attempts to obtain a cooperation agreement.  This argument cannot succeed because both Mooney and Lund testified that once Angelos demonstrated his lack of credibility, the government was unwilling to work with him.  Further offers to cooperate would have been futile.

---

[5]     At some point before the cooperation interview, Mooney informed Angelos that based on the charges in the initial indictment, he was facing a potential sentence of seven to eight years, including five years for the single § 924(c) charge.  *Id.* at 1589.  He also told Angelos that "he shouldn't be surprised to see the government continuing to give us additional information and continuing to try to do things that make it look worse."  *Id.* at 1591.

[6]     Mooney testified that he did not know about all the § 924(c) charges Angelos potentially faced until he received a plea offer from Lund in January 2003.  Aplt. App., Vol. V at 1613-14.

## 2. The Government's Written Plea Offer

After the failed cooperation talks, Lund sent a letter to Mooney outlining the government's position and its proposal for a plea agreement. This letter, dated January 20, 2003, made it crystal clear that Angelos faced serious prison time if he failed to reach a plea agreement with the government. Lund began the letter by reminding Mooney that the single 924(c) count for which Angelos had already been indicted "carries a mandatory minimum sentence of five years and a maximum penalty of life imprisonment." Aplee. Supp. App., Vol. I at 440. He then proposed that Angelos plead guilty to one count of distribution of marijuana, and one 924(c) count, and that he stipulate to a joint sentencing recommendation of sixteen years' incarceration. In exchange, the government would dismiss the remaining counts of the indictment and would agree not to supersede the indictment.

If Angelos did not agree to these terms, however, Lund stated that the government would seek a superseding indictment including five additional 924(c) counts, potentially exposing Angelos to 130 years of prison time. Lund's letter explained that "[s]ubsequent [924(c)] convictions . . . carry a mandatory minimum sentence of twenty-five (25) years each" and that "[t]he statute mandates that these sentences run consecutively to each other and to the underlying drug trafficking crimes." Aplee. Supp. App., Vol. I at 441.

Angelos claims Mooney "dissuad[ed him] from giving due consideration to the government's plea offer." Reply Br. at 4. He argues that Mooney did not understand the basis for the government's offer and "expressly and consistently indicated to [him] that a better deal was possible and that the prosecution was being 'completely unfair,'" *id.*, and "completely unreasonable," *id.* at 7. He further asserts that Mooney "failed to understand the legal and practical consequences of rejecting the Government's plea offers, and thus failed to effectively inform and advise Angelos concerning his plea options and their likely consequences following the Government's offer." Aplt. Opening Br. at 39.

At the evidentiary hearing, Mooney testified that he showed Angelos the letter from Lund. Aplt. App., Vol. V at 1618. He "went through and discussed with him each of the ten charges" that were detailed in the letter. *Id.* Mooney admitted that he did not present Lund's sixteen-year proposed sentence in a positive light. In fact, he recalled that he may have "used an improper anatomical reference to Mr. Lund" in connection with this proposed sentence. *Id.* He expressed to Angelos that he believed the sixteen-year proposal was unreasonable. In fact, by the time of the evidentiary hearing, he continued to believe that sixteen years was too long, given the two offenses to which the government would have required a guilty plea. He believed an appropriate guideline calculation would have required a sentence of only twelve years. *Id.* at 1621.

Mooney did not, however, consider his expression of opinion to be a recommendation to reject the proposed plea agreement or to stop trying to reach a deal with the government. *Id.* at 1619. He left the decision whether to accept the offer to Angelos. Furthermore, contrary to Angelos's contentions, Mooney did not suggest a light sentence was probable if he went to trial. He explained to Angelos that it would be very difficult to avoid at least one 924(c) conviction at trial if he were indicted for the guns found in his home. *Id.* at 1622. He further explained that even one additional 924(c) conviction would bring an additional sentence of 25 years.

We agree with the district court that Mooney adequately explained the government's offer to Angelos. The fact that Mooney put a negative spin on the offer and suggested that the government was being "unfair" or "unreasonable" did not represent deficient performance. We accept the district court's view that Mooney made it clear to Angelos the decision to accept the proposed plea agreement was his. Moreover, he encouraged Angelos to submit a counter-offer that included pleading to a 924(c) count, but Angelos was unwilling to do so.

Instead, Angelos authorized Mooney to make a counteroffer of a plea that would not include a 924(c) charge. Mooney explained to Angelos that such an offer would be unacceptable to the government. Mooney nevertheless conveyed it to Lund, who rejected it. Mooney even asked Lund, without specific authorization from Angelos, to consider the possibility that Angelos would plead

-16-

to the two counts and receive a lower sentence than the sixteen years Lund had suggested, but Lund vetoed that idea as well.

Angelos contends that Mooney strung him along by contending that he could get a better offer from the government if he just kept negotiating. But on the other hand, he also asserts that Mooney cut off plea negotiations too early and began preparing for trial without adequately exploring the possibility of a negotiated plea. Mooney's testimony at the evidentiary hearing explains these seeming inconsistencies. He did expect to talk the government down from its initial offer. But without the key bargaining chip—Angelos's consent to a plea containing a 924(c) count—his hands were tied. It would have been irresponsible for him not to prepare for a trial, given Angelos's unwillingness to plead to a 924(c) count and the government's insistence on such a plea.

Angelos further suggests, however, that his reluctance to plead to a 924(c) count would have evaporated if Mooney simply had understood and conveyed to him with more mathematical precision the risks associated with failing to take the government's offer. On the other side of the "plead or go to trial" scale, he faults Mooney's estimate that "if we were victorious at trial on most of the charges and lost the things that looked like were going to be problematic, we probably were looking at something that would be between seven and twelve years." Aplt. App., Vol. V at 1627.

-17-

Angelos makes a number of specific arguments on these points, none of which ultimately has merit.  He asserts that:

- Mooney "misunderstood and/or mis-communicated to Angelos how the operation of federal sentencing statutes and guidelines dramatically increased his mandatory minimum sentence even if he were to partially prevail at trial."  Aplt. Opening Br. at 38.  Angelos does not flesh out this argument, but it appears that he is referring to the 924(c) counts.  In this regard, it is incontestible that Lund's letter specifically detailed (1) the mandatory minimum sentences, (2) the maximum sentences, and (3) the effect of stacking associated with 924(c), which Mooney in turn discussed with Angelos.  *See* Aplee Supp. App., Vol. I at 441.  By discussing Lund's letter with Angelos, Mooney adequately conveyed the risks associated with conviction on these counts.

- Mooney failed to convey to Angelos that even if he prevailed on all the contested gun counts at trial, he faced nearly a twenty-year sentence.  Reply Br. at 6.  Mooney bases this contention on the government's position at sentencing that relevant conduct involving marijuana alone required a corresponding guideline range of 168 to 210 months.  Aplee. Supp. App., Vol. I at 69.  He does not mention, however, that the presentence report, prepared after conviction,

recommended a sentence of only six and one-half years for the drug and money laundering convictions. *See Angelos*, 433 F.3d at 743. It appears, therefore, that Mooney's estimate was closer to the appropriate sentence on these counts than the government's sentencing position.

•  Mooney "repeatedly and prejudicially suggested to Angelos that he was unlikely to serve more than a few years in prison even if they lost at a trial." Aplt. Opening Br. at 38. The evidentiary hearing testimony does not support this claim.

•  Mooney failed to effectively advise Angelos that "he was *certain* to receive a longer sentence—and probably a *much* longer sentence—if he went to trial than if he pleaded guilty even on the specific terms proposed by the Government." *Id.* at 39. Angelos fails to explain or detail his argument on this point. Had he been successful at trial in limiting his convictions to only a single 924(c) count related to the guns at his home and the marijuana and money laundering offenses, he would not have received a "much longer sentence" than the sixteen years offered by the government.

•  Mooney failed to explain to Angelos that "despite his assertions that he did not possess a gun during marijuana sales to an informant, he could still be convicted of one or more § 924(c) counts based on the

discovery of guns in his home and other locales." Aplt. Opening Br. at 39. On the contrary, Mooney "explain[ed] how hard it would be were [Angelos] indicted for the guns in his home to avoid at least one 924(c) conviction." Aplt. App., Vol. V at 1622. This estimation proved correct. The jury acquitted Angelos of two 924(c) charges involving guns found at his girlfriend's residence, but convicted him for guns in his home and in connection with sales to the confidential informant.

- Mooney failed to explain to Angelos that "despite his assertions that he did not possess a gun during marijuana sales to an informant, he would be subject to a *mandatory minimum* sentence of 50 years or more if a jury did not believe his assertions." Aplt. Opening Br. at 39-40. The letter from Lund explained how the 924(c) counts worked, including the mandatory minimums. Mooney was not constitutionally required to calculate every possible contingency, but it is clear that Angelos had information disclosing the worst case scenario.

\* \* \*

In sum, Angelos fails to show that Mooney performed deficiently during plea bargain negotiations. In light of this, we need not consider further whether he was prejudiced by the alleged deficient performance.

-20-

### III.  Ineffective Assistance at Trial

Angelos also raises a number of instances of Mooney's alleged ineffectiveness in preparing for and representing him at trial.  We find no merit in these arguments.

### A.  Lazalde's Gun Testimony

Angelos first points to the testimony of the confidential informant, Ronnie Lazalde.  Two of the 924(c) counts on which the jury convicted Angelos involved his possession of firearms during sales to Lazalde.  In his direct appeal, we previously held that the "evidence overwhelmingly supported the jury's findings that Angelos knowingly carried and possessed the pistol during [these] controlled purchases."  *Angelos*, 433 F.3d at 749.  Angelos contends, however, that with adequate pre-trial investigation, Mooney could have raised a reasonable doubt concerning Lazalde's testimony about the presence of firearms during these transactions.

### 1.  May 21, 2002 Sale

Lazalde testified that during the controlled buy of May 21, 2002, he saw a pistol lodged between the seat of the BMW and the center console when he and Angelos consummated the drug purchase.  Angelos contends Mooney should have better impeached this testimony because (1) the initial police reports concerning the controlled buy did not mention a pistol; and (2) a later report by a detective

who recorded Lazalde's statement stated that the pistol was on the car's *console*, not tucked in a seat as Lazalde testified at trial.

Mooney cross-examined both the detective and Lazalde at some length about the contradictions in the police reports and their trial testimony concerning the existence, whereabouts, and visibility of the gun. *See* Aplt. App., Vol. IV at 1059, 1062-65, 1135-39, 1143. He then argued to the jury that the contradictions made the testimony unworthy of belief. *Id.*, Vol. V at 1482-83, 1485-87. Although Angelos argues about the need for more effective investigation and cross-examination concerning these contradictions, it is clear from the trial record that Mooney adequately impeached Detective Mazuran and Lazalde concerning these issues.

### 2.  June 4, 2002 Sale

Lazalde testified that he saw a firearm in an ankle holster on Angelos's leg during the June 4, 2002 sale. Angelos argues that the government's surveillance photos prove that it would have been impossible for Lazalde to see the firearm during the transaction. He contends the position of Angelos's car blocked Lazalde's line of sight.

But Mooney did question Lazalde at trial, using the surveillance photos, about whether he could see the gun in the ankle holster given his position and that of the car. *See* Aplee. Supp. App., Vol. I at 317-18. He also argued about Lazalde's line of sight in his closing argument to the jury. *See* Aplt. App., Vol. V

at 1483-85.  Even so, Angelos contends he should have done more to impeach Lazalde.  Specifically, he argues Mooney's cross-examination "should have included the use of an expert witness to examine and assess the government's surveillance photos" and to provide expert testimony concerning line-of-sight issues.  Aplt. Opening Br. at 44.

"Federal Rule of Evidence 702 instructs us to admit specialized knowledge if it will 'assist the trier of fact to understand the evidence.'  That Rule dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject."  *United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000) (quotation omitted).  Angelos fails to make the case that expert testimony was required to impeach Lazalde's testimony, particularly when the surveillance photographs were available to the jury.

### 3.  New Arguments Made in Reply Brief

In his reply brief, Angelos raises a number of new arguments pertaining to the 924(c) charges in connection with the controlled buys.  First, he argues that counsel was ineffective in failing to explain to the jury *why* Lazalde changed his story.  *See* Reply Br. at 17-19.  He contends Mooney should have argued the inconsistencies in Lazalde's story were attributable to his desire to conform his testimony to the 924(c) gun statute and to avoid contradicting the statements of other witnesses.  Angelos fails to show he made this argument to the district court

-23-

in the context of his ineffective assistance claim. We could decline to consider the argument on that basis alone. But we note in addition that Angelos fails to explain how trial counsel who points out numerous contradictions in a witness's account is *constitutionally ineffective* merely by failing to offer a theory to explain the inconsistencies. In any event, it was no mystery at trial that Lazalde had received substantial benefits from the government in exchange for his testimony ("[H]e was doing all this to tell the truth because he had a motive to stay out of jail and turn his life around." Aplt. App., Vol. V. at 1504.)

We decline to consider two other arguments. (1) that Mooney unconstitutionally failed to impeach Lazalde about changing his story in the police report from one stating he saw Angelos wearing a holster, to testimony that he "allegedly witnessed and was even able to make out the model of the gun," Reply Br. at 22; and (2) Mooney unconstitutionally failed to cross-examine Officers Bailey and Cottam concerning their failure to observe what Lazalde claimed to see during their surveillance of the June 4, 2002, controlled buy. We see no indication Angelos made these arguments to the district court. "Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal." *Curtis v. Chester*, 626 F.3d 540, 548 (10th Cir. 2010) (quotation omitted).

## B. Admission of Police Report

Angelos also argues that counsel should have obtained "admission of the original police reports that failed to reflect any mention of weapons during any of the hand-to-hand sales." Aplt. Opening Br. at 49. Mooney did seek admission of the police reports, and the district court rejected his request. We upheld this evidentiary decision on appeal. *Angelos*, 433 F.3d at 749-50.[7] But even without the police reports in evidence, Mooney was able to cross-examine the officer who prepared the reports about the omissions. Aplt. App., Vol. IV at 1047-1052, 1054-67.

## C. Impeachment of Chelsea Davenport

In his reply brief, Angelos argues that "Mooney failed to investigate and effectively impeach Chelsea Davenport, a key government witness and estranged girlfriend of Angelos who testified at trial that Angelos frequently carried a firearm." Reply Br. at 23. He also contends (1) Mooney incompetently opened the door to Davenport's testimony that Angelos beat her while she was pregnant, leading to the premature birth of their child and forcing her to mace him in self-defense, and (2) Mooney was unprepared to present an accurate account of these

---

[7]     In upholding the district court's decision, we did state that "Angelos's counsel made no attempt to explain why the reports were admissible or to question the district court's ruling." *Angelos*, 433 F.3d at 750. This does not demonstrate constitutionally ineffective assistance, however. Angelos fails to show that there was a legally-sufficient basis for admission of the reports that Mooney should have pursued.

events based on the actual police reports and other evidence. The government argues Angelos failed to raise these latter claims before the district court, and we agree.[8] We therefore consider only the issue raised in the district court: whether counsel failed to subject Davenport's testimony to adequate impeachment "for bias and for inconsistent statements." Aplt. App., Vol. I at 129.

We agree with the district court that Mooney's performance in impeaching Davenport was not constitutionally deficient. He cross-examined her thoroughly about her bias and irrational behavior toward Angelos. *See* Aplee. Supp. App., Vol. III at 976-94. He also elicited testimony from other witnesses about her angry and threatening behavior toward Angelos. *Id.* at 1001-02, 1029-30, 1103-04. For example, he obtained testimony she drove outside a recording session Angelos was conducting with a female singer, and "persistently honk[ed] [her car] horn maybe for 45 minutes at a time" to interfere with the recording session. *Id.* at 1029. Another witness testified Davenport "would throw big tantrums, pull – rip her hair out, cry, cut her face with a razer [sic]. She was crazy. Just sickly obsessed." *Id.* at 1104. Counsel also questioned Davenport about prior inconsistent statements. *See id.* at 979, 983, 991.

In short, Mooney's performance at trial was not constitutionally deficient.

_____

[8]    Angelos contends in his reply brief that he did raise the claims; his citations to the record, however, are unconvincing on this point. *See* Aplt. Reply Br. at 23-24 n.12 (citing Aplt. App., Vol. I at 129-30, 237 n.2).

**IV. Evidentiary Hearing**

As we have shown, Angelos's claims of ineffective assistance of counsel at trial do not meet the *Strickland* threshold. The district court therefore did not abuse its discretion by failing to grant him an expanded evidentiary hearing concerning them. (Nor, for reasons we will describe, did any of his other issues, on which we deny COA, require an evidentiary hearing.)

Angelos makes one additional argument worth noting. He contends our grant of a COA on his ineffective assistance at trial claim is inconsistent with the district court's determination no evidentiary hearing was necessary on the claim because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). This argument misperceives the nature of a COA. The grant of a COA involves only a threshold inquiry that "does not require full consideration of the factual or legal bases adduced in support of the [petitioner's] claims. In fact, the statute forbids it." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). In granting Angelos a COA, we conducted only "an overview of the claims in [his] petition and a general assessment of their merits." *Id.* This overview did not permit us to make any conclusive assessment of the state of the record or its bearing on the ultimate question of whether an evidentiary hearing was required.

## V. Procedurally-Defaulted Claims

We now turn to the claims on which we deny Angelos a COA.  The district court barred his Eighth Amendment and equal protection claims, finding that this court had previously considered and rejected them in his direct appeal.  *See United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (holding issues disposed of on direct appeal will not generally be considered in § 2255 collateral attack, absent intervening change in law).  It also barred his Second Amendment claims, Fifth Amendment vindictive prosecution and prosecutorial misconduct claims, and separation-of-powers claims because they could have been raised on direct appeal.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).  Angelos argues that all of these claims should be considered on the merits because "they involve claims for which a procedural bar is inappropriate and/or because [he] can readily satisfy one or more of the established exceptions to procedural bar rules."  Aplt. Opening Br. at 26.[9]

"There are . . . two well recognized exceptions under which a defendant may escape application of the procedural bar against consideration of defaulted claims."  *United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004).  First, he may show "cause and prejudice," that is, that he had "both good cause for failing

[9]    Angelos makes no argument specific to his separation of powers and equal protection claims.  Accordingly, we need not address the issue of whether he is entitled to a COA as to these claims.

to raise the issue earlier, and that the court's failure to consider the claim would result in actual prejudice to his defense[.]" *Id.*[10] Alternatively, if he can show that "failure to consider the federal claims will result in a fundamental miscarriage of justice, the court may reach the merits of the claimed constitutional deficiencies despite the procedural bar." *Id.* (quotation omitted). We now consider whether he has satisfied either of these exceptions with respect to his barred claims.

### A. Second Amendment Claim

In his § 2255 motion, Angelos advanced a claim that "the 25-year term of imprisonment as applied in this case for having firearms in his home raises serious concerns under any individual rights interpretation of the Second Amendment's protection of the right to 'keep and bear arms.'" Aplt. App., Vol. I at 158. He contends that he demonstrated cause for failing to raise this Second Amendment claim on direct appeal, because the claim did not become available to

---

[10] Angelos makes a two-sentence argument that his *trial* counsel's failure to raise certain claims constitutes cause and prejudice that should excuse his procedural default. Aplt. Opening Br. at 32-33. His default extends, however, not only to arguments omitted at trial, but more importantly to those omitted on direct appeal. Since his trial counsel also represented him in his direct appeal, it is unclear whether he contends that counsel's failure to raise certain claims on direct appeal constituted ineffective assistance of counsel. But he has failed to show that counsel's failure to raise his Second and Fifth Amendment arguments on direct appeal represented deficient performance, given the apparent lack of merit of these claims. (Counsel did, of course, raise his Eighth Amendment claims on direct appeal and therefore could not have been ineffective for omitting them.).

him until the Supreme Court granted certiorari in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008).  He asserts it would have been both futile and frivolous to have raised his claim prior to *Heller*, which was issued after disposition of his direct appeal.

Angelos's argument that he could not have raised his claim prior to *Heller* is unavailing.  Futility does not constitute cause to excuse a procedural default if it means simply that a claim would have been unacceptable to a particular court at a particular time.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Angelos has failed to "demonstrate that his claim was so novel [at the time of direct appeal] that its legal basis was not reasonably available to counsel."  *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002).  Nor was there anything particularly novel about a Second Amendment attack on a conviction under § 924(c) at the time he filed his direct appeal.  *See, e.g., United States v. Hager*, 22 F. App'x 130, 132 (4th Cir. 2001) (per curiam); *Box v. United States*, 904 F. Supp. 773, 777 n.4 (N.D. Ill. 1995), *aff'd*, 106 F.3d 403 (7th Cir. 1997).  Angelos has therefore failed to show cause to excuse his procedural default based on the alleged novelty or futility of his Second Amendment claim.

Moreover, even if he could show cause for omitting this claim from his direct appeal, he fails to show prejudice.  The majority in *Heller* made it clear that "the right secured by the Second Amendment is not unlimited" and that "nothing in our opinion should be taken to cast doubt on longstanding

prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings[.]" *Heller*, 128 S. Ct. at 2816-17. More importantly, the charges against Angelos were not simple felon-in-possession claims, but charges of possessing and using firearms to facilitate large-scale drug trafficking.

Since *Heller* was decided, circuit courts have uniformly rejected *Heller* challenges to convictions under § 924(c). *See, e.g., Costigan v. Yost*, 334 F. App'x 460, 462 (3d Cir. 2009) (stating *Heller*'s reasoning "does not render [§ 924(c)(1)(A)] unconstitutional"); *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir.), *cert. denied*, 130 S. Ct. 147 (2009); *United States v. Frazier*, 314 F. App'x 801, 807-08 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 1652 (2009). *Cf. United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (upholding statutory prohibition on possession of firearm by felon under 18 U.S.C. § 922(g) against *Heller* challenge).

In sum, Angelos has failed to show his entitlement to a COA on his Second Amendment claim.

### B. Fifth Amendment Claims

Angelos contends a defendant should not be required to bring Fifth Amendment claims of prosecutorial vindictiveness and misconduct until collateral review proceedings. His view is that the factual basis for such claims often is unavailable to the defendant until after his direct appeal is complete. He

analogizes such claims to ineffective assistance of trial counsel claims, for which the record generally is not developed until collateral review. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal [because the] factual record must be developed in and addressed by the district court in the first instance for effective review.") We decline to adopt a categorical rule excusing defendants from bringing prosecutorial vindictiveness and misconduct claims on direct appeal. Angelos's argument that these claims are of the type that cannot adequately be raised until collateral proceedings is unpersuasive.

The appropriate remedy available to a defendant who discovers evidence of prosecutorial misconduct or vindictiveness after completion of his direct appeal is to use that evidence as cause to excuse his procedural default. Angelos argues he has new evidence "that federal prosecutors decided to pursue multiple charges against Angelos with the threat of extreme mandatory minimum sentencing terms only after--and perhaps only because--prosecutors came to believe Angelos was unwilling to cooperate with authorities." Aplt. Opening Br. at 22 n.11. He contends that he "has reason to believe that the government's aggressive and oppressive approach to plea bargaining following the original indictment was motivated, at least in part, to punish Angelos for his interest in exercising his constitutionally protected right not to cooperate with authorities." *Id.* at 34.

Even assuming such allegations show cause to excuse his procedural default, he has failed to show the required prejudice. As the district court noted, nothing in the record or in Angelos's arguments suggests that the prosecution behaved unconstitutionally in its charging decisions. Angelos made a tactical choice to reject the plea bargain offered by the government with its associated terms and requirements, and to proceed to trial. He does not assert the government lacked probable cause to charge him with the offenses identified in the second superseding indictment. *See United States v. Sarracino*, 340 F.3d 1148, 1178-79 (10th Cir. 2003). While he suggests the prosecution in his case may have persuaded the confidential informant to lie about his possession of a firearm during one of the controlled buys, his contentions about government-sponsored lying remain just that--unsupported speculation.

In sum, he has failed to show actual prejudice that would excuse the procedural bar.

### C. Eighth Amendment Claim

The district court barred Angelos's Eighth Amendment claim because it was raised and rejected in this court's decision on his direct appeal. He contends, however, that "landmark intervening changes in applicable Supreme Court law and relevant constitutional facts" make his Eighth Amendment claim, considered in tandem with his Second Amendment argument, "ripe and proper for review on the merits." Aplt. Opening Br. at 28. This argument lacks merit.

The alleged landmark changes on which Angelos relies include the Second Amendment *Heller* case, and two new Eighth Amendment cases, *Kennedy v. Louisiana*, 128 S. Ct. 2641 (2008) and *Graham v. Florida*, 130 S. Ct. 2011 (2010). Neither *Kennedy* nor *Graham*, alone or in tandem with *Heller*'s Second Amendment conclusions, however, requires us to alter the proportionality analysis contained in our previous opinion. *See Angelos*, 433 F.3d at 750-53. We therefore deny Angelos a COA on his Eighth Amendment claim.

### D. Miscarriage of Justice

Angelos contends that he has shown a "fundamental miscarriage of justice" requiring this court to "reach the merits of the claimed constitutional deficiencies despite the procedural bar." *Cervini*, 379 F.3d at 990-91. He argues that he meets this standard because he is "actually innocent" of one of the gun possession convictions. To meet this exception to procedural bar, however, he must show that the constitutional errors he asserts likely "*resulted in the conviction* of one who was actually innocent." *Id.* at 991 (emphasis added) (quoting *Schlup v. Delo*, 513 U.S. 298, 322 (1995)). Neither his Second Amendment nor his Eighth Amendment claims, both of which target the severity of his sentence rather than the fact of his conviction, satisfy this causal nexus. Addressing the alleged constitutional sentencing errors would not vitiate his convictions; at best, it would require that he be re-sentenced. *Cf., e.g., United States v. Richards*, 5 F.3d 1369,

-34-

1371 (10th Cir. 1993) (stating one "cannot be actually innocent of a noncapital sentence").

His Fifth Amendment claims, if successful, could conceivably affect the disposition of the § 924(c) count as to which he claims actual innocence. But as we have seen, these Fifth Amendment claims fail on the merits, because he has failed to show that the prosecution violated the Constitution in its charging decisions.

Angelos also argues that separate and apart from any concern about innocence, he meets the miscarriage of justice standard because the district court concluded the mandatory sentence he received on the firearm counts appeared "cruel, unjust, and irrational." Aplt. Opening Br. at 33 (quoting *United States v. Angelos*, 345 F. Supp. 2d 1227, 1230 (D. Utah 2004)). He identifies no authority that would treat an "unfair" sentence alone as a grave miscarriage of justice sufficient to excuse procedural default. He has not shown his entitlement to a COA on this issue.

## VI. Discovery and Evidentiary Hearing

Angelos also argues that the district court abused its discretion by failing to permit him to conduct discovery or otherwise to submit evidence in support of his claims. He makes two separate arguments concerning the development of the evidentiary basis for his claims. In the first argument, Angelos contends that he already possesses evidence he wished to present for the district court's

consideration, but was denied leave to do so.  In the second, he requests an opportunity to develop additional evidence through discovery.

Angelos complains that he alerted the district court in his motion for reconsideration that he had additional evidence he wished to present in support of his Fifth and Sixth Amendment claims.  He contends that the district court "issued an order denying the motion without reference to the new evidence."  Aplt. Opening Br. at 25 n.13.[11]  This contention misstates the record.  In response to his motion, the district court specifically stated:

> [Angelos] also claims he has obtained new evidence since the December 3, 2007 filing  of his § 2255 motion and contends he has the right to introduce the evidence into the record at an evidentiary hearing.
>
> In his motion for reconsideration, Mr. Angelos does not describe the evidence he has since collected or why such evidence was unavailable before the filing of the § 2255 motion.  He does not clarify why he was unable to present the unidentified evidence, or at least alert the court to such evidence, more than two days before an evidentiary hearing which all understood to be limited to a separate issue.  Given the vagueness of Mr. Angelos's motion for reconsideration, and its timing . . . the court denies his request to submit evidence and arguments during the [evidentiary] hearing that do not relate to the issue for which the hearing was originally set.

Aplt. App., Vol. II at 296-97.

---

[11]     Angelos attempts to split hairs by arguing that the district court's order only addressed new evidence acquired before October 2008, not the evidence that he acquired after that date and indicated a desire to present in his motion.  *See* Aplt. Opening Br. at 24-25 n.13.  There is no indication in the district court's order, however, that it did not intend to address *all* of the new evidence Angelos purported to possess at the time he filed his motion.

Angelos fails to show that this analysis represents an abuse of discretion. We therefore deny him a COA on his claim that the district court improperly denied him leave to submit additional evidence on his Fifth Amendment claims.

Angelos also asserts that the district court erred in denying his requests for discovery. The district court reasoned that he (1) failed to provide any proposed discovery to the court, in violation of Rule 6(b) of the Rules Governing § 2255 Proceedings, and (2) failed to show "good cause" for discovery as required by Rule 6(a) of those rules. It noted that although Angelos had presented some circumstantial evidence relating to the issue of prosecutorial vindictiveness or misconduct, the alleged evidence did not rise to a showing of "good cause" for discovery as to these issues. There is no abuse of discretion in this determination, and we therefore deny COA on this issue.

Finally, Angelos fails to show anything in the files and records of the case that would warrant an evidentiary hearing on his Fifth Amendment claims. The issue of whether his Second Amendment and Eighth Amendment claims were procedurally barred involved issues of law that did not warrant an evidentiary hearing.

**CONCLUSION**

The judgment of the district court is AFFIRMED concerning Angelos's claims of ineffective assistance of counsel during plea negotiations and trial, and concerning the district court's failure to hold an evidentiary hearing on the ineffective assistance at trial claims. We DENY him a COA pertaining to the other issues raised on appeal, and DISMISS the appeal as to those issues.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge