**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 13, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

DANIEL CHALAN, JR.,

      Defendant–Appellant.

No. 11-2058
(D.C. Nos. 1:10-CV-00314-JEC-WPL &
1:85-CR-00034-JEC-1)
(D. N.M.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **EBEL,** and **GORSUCH**, Circuit Judges.

Daniel Chalan Jr. seeks a certificate of appealability ("COA") to appeal the district

court's denial of his 28 U.S.C. § 2255 habeas petition. We deny a COA and dismiss.

**I**

On January 28, 1985, an Allsup's convenience store located within the Cochiti

Pueblo was robbed. Inside the store, police discovered the body of the assistant store

manager, who had been shot multiple times and repeatedly bludgeoned. Several bullet

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

fragments and spent casings were recovered from the scene.

The day after the murder, police and FBI agents learned that Chalan, his brother, and two cousins had been seen near the crime scene wielding rifles. Authorities subsequently interviewed Chalan, who initially denied that he was involved in the crime. The following day, however, he confessed to committing the murder. His detailed confession largely matched the physical evidence discovered at the crime scene. Chalan also directed police to pieces of a rifle hidden nearby which contained hair consistent with the victim's, and to a key that fit the Allsup's cash register.

Chalan was charged in federal court with first-degree murder, robbery, and two counts of using a firearm during a felony. The prosecution called more than twenty witnesses during a four-day trial. One of these witnesses, FBI Special Agent Earnest Peele, testified about the composition of the bullet fragments found at the crime scene. Using a technique known as comparative bullet lead analysis ("CBLA"), Peele concluded that the fragments found at the crime scene fell into three groups. He testified that fragments within each group were similar enough in composition that they likely came from the same box of bullets or from boxes of bullets manufactured around the same time. Peele could not opine as to whether bullet fragments across groups came from the same box.

A jury convicted Chalan on all counts. On direct appeal, we vacated one of Chalan's firearm convictions and remanded for an evidentiary hearing on the

- 2 -

government's use of peremptory strikes. United States v. Chalan, 812 F.2d 1302, 1317 (10th Cir. 1987). The district court ultimately upheld Chalan's remaining three convictions.

More than twenty years later, Chalan received a letter from the U.S. Attorney's Office stating that the FBI had ceased using the CBLA technique and noting that Agent Peele's trial testimony may have been misleading. Based on this new information, Chalan filed a § 2255 petition claiming that the admission of Peele's testimony violated his right to due process. The district court held that Chalan had procedurally defaulted his claim by failing to raise it on direct appeal. Although it concluded that Chalan established cause because the factual predicate of his claim was unavailable at the time of his direct appeal, the court held that Chalan failed to demonstrate prejudice.

## II

A petitioner may not appeal the denial of habeas relief under § 2255 without a COA. 28 U.S.C. § 2253(c)(1)(B). We will issue a COA only if Chalan can show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

As a general rule, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United

- 3 -

States, 538 U.S. 500, 504 (2003) (citation omitted). To show cause for a procedural default, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Establishing prejudice requires a petitioner to demonstrate that the claimed constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

The Supreme Court has indicated that a petitioner can establish cause by showing that "the factual or legal basis for a claim was not reasonably available" at the time of direct appeal. Murray, 477 U.S. at 488 (citation omitted). In the § 2254 context, we have applied the cause and prejudice test to a claim asserted under Brady v. Maryland, 373 U.S. 83 (1963), in which the facts underlying the claim could not have been discovered until after a conviction became final. See Scott v. Mullin, 303 F.3d 1222, 1227-30 (10th Cir. 2002); see also United States v. Angelos, 417 F.App'x 786, 801 (10th Cir. 2011) (unpublished) ("The appropriate remedy available to a defendant who discovers evidence of prosecutorial misconduct or vindictiveness after completion of his direct appeal is to use that evidence as cause to excuse his procedural default.").

Nevertheless, Chalan argues that he did not procedurally default because he could not have discovered the deficiencies of the CBLA evidence at the time of his direct appeal. He cites to Bousley v. United States, 523 U.S. 614 (1998), in which the Court

recognized "an exception to the procedural default rule for claims that could not be presented [on direct appeal] without further factual development." Id. at 621. Chalan maintains that his claim required further factual development because the letter he received from the U.S. Attorney's office was not—and could not have been—part of the record on direct appeal. On this basis, he asserts that the exception to the procedural default rule applies and he should not be obligated to show cause or prejudice.

Our circuit has not explicitly considered the interaction between Murray and Bousley. The former holds that a petitioner can show cause when the "the factual . . . basis for a claim was not reasonably available" at the time of direct appeal. Murray, 477 U.S. at 488 (citation omitted). This statement suggests the cause and prejudice inquiry applies to such claims. But if the factual predicate for a claim is not available, it would appear to qualify under Bousley as a "claim[] that could not be presented without further factual development." 523 U.S. at 621.[1]

We need not decide whether Chalan's claim fits within the exception identified in Bousley. To obtain a COA, Chalan must establish not only that the district court's

---

[1] One could read Bousley as limited to situations in which a petitioner was aware of his claim at the time of direct appeal but lacked a sufficient record to present it. See 523 U.S. at 621 (exception can be applied when facts underlying claim were "dehors the record and their effect on the judgment was not open to consideration and review on appeal" (quoting Waley v. Johnston, 316 U.S. 101, 104 (1942) (per curiam))). However, it would be a curious result to treat as procedurally defaulted claims that could not have been raised because the factual predicate for the claim was unavailable, but exempt from procedural default claims that could not have been raised simply because the trial record was insufficient.

procedural ruling was debatable, but also that the merit of his claim is subject to reasonable debate. See Slack, 529 U.S. at 484. And to prevail on a § 2255 claim that the admission of objectionable evidence violated a petitioner's due process rights, the petitioner must show that "the error had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993); see also United States v. Dago, 441 F.3d 1238, 1245-46 (10th Cir. 2006) (Brecht standard applies to trial type constitutional errors in § 2255 proceedings). Accordingly, Chalan must show some form of prejudice regardless of the application of the procedural bar. This he cannot do.

Assuming that the admission of CBLA testimony was error,[2] we agree with the district court that the error did not influence the jury's verdict. The CBLA evidence presented at trial merely implied that some bullet fragments found at the crime scene likely came from the same box of bullets. But Peele did not claim that all of the bullet fragments came from the same source. Accordingly, Peele's testimony did not undermine Chalan's argument that other individuals must have been involved in the crime.[3] Nor did Peele tie the fragments to Chalan in any way. Even if jurors accepted

_____

[2] For a discussion of the problems with CBLA analysis, see United States v. Berry, 624 F.3d 1031, 1035 n.3, 1037 (9th Cir. 2010).

[3] Another witness testified that although some bullet casings found at the scene matched others, the variety of casings found throughout the store suggest that more than one gun was involved.

Peele's testimony, it was at worst a cursory supplement to the other evidence offered at trial. Chalan confessed to the murder and relayed knowledge about details of the crime scene. He also directed police to a weapon that contained hairs consistent with the victim's and to a key which was taken from the store. In light of this unequivocal evidence, the CBLA testimony had no apparent impact on Chalan's convictions, and thus he suffered no actual prejudice.

## III

Because Chalan has not shown that his claim is debatable on the merits, we **DENY** a COA and **DISMISS** the appeal.

Entered for the Court

Carlos F. Lucero
Circuit Judge